[No. 33039-3-II.   Division Two.   September 19, 2006.]

THE STATE OF WASHINGTON, *Respondent*, v. ALFREDO CARRENO-MALDONADO, *Appellant*.

78

*Rita J. Griffith*, for appellant.

*Gerald A. Horne, Prosecuting Attorney*, and *Todd A. Campbell, Deputy*, for respondent.

¶1 QUINN-BRINTNALL, C.J. — Alfredo Carreno-Maldonado appeals the trial court's denial of his motion to withdraw his guilty plea. We hold that the deputy prosecutor's statements at the sentencing hearing breached the plea agreement by undercutting the State's agreed sentence recommendation. Because such error is not subject to harmless error analysis, we reverse and remand.

## FACTS

¶2 The State charged Carreno-Maldonado with 15 counts: 9 counts of first degree rape, 2 counts of second degree rape, 2 counts of first degree robbery, 1 count of first degree kidnapping, and 1 count of second degree assault. The parties subsequently entered into a plea agreement whereby Carreno-Maldonado agreed to plead guilty to seven counts: one count of first degree rape, five counts of second degree rape, and one count of second degree assault. In exchange for the guilty plea, the State agreed to recommend concurrent sentences of (1) a low-end standard range

sentence of 240 months for the first degree rape count, (2) a midpoint standard range sentence of 240 months for the five second degree rape counts, and (3) a high-end standard range sentence of 84 months for the second degree assault count.[1]

¶3 The court accepted Carreno-Maldonado's *Alford*[2] plea. At the sentencing hearing, the court set out the standard range sentences and acknowledged having reviewed the presentence investigation report (PSI) and the plea agreements. When the court asked if the State had anything to add, the deputy prosecutor replied:

Your Honor, I just wanted to speak on behalf of the victims. I would note that there are three victims in the courtroom today. There are a total of seven victims in this case. Two of them we were never able to connect with, solidly anyway. . . . But, we do have three women here today. *It's my understanding they are just here to observe. They don't want to speak to the court.*[3] And, I just wanted to make a brief statement on their behalf. As Your Honor probably noticed in reading the declaration of probable cause and in taking the plea and reading the PSI, this is a case of a defendant who engaged in very extreme violent behavior for the purpose of obtaining what he calls or is quoted as saying "free sex." It's the [S]tate's position that he preyed on what would normally be considered a vulnerable segment of our community and these women are vulnerable insofar as they are exposed to the kind of people that [Carreno-Maldonado] is. They're the type of victims that probably make the best victims and maybe [Carreno-Maldonado] recognized that; that they were less likely to report the crimes to the police. If they even do get to that point they're less likely to come to court and testify or be involved whatsoever in the prosecution process. That was the case for a couple of the

---

[1] Carreno-Maldonado's standard range sentence for each count was (1) 240 to 318 months for first degree rape, (2) 210 to 280 months for second degree rape, and (3) 63 to 84 months for second degree assault.

[2] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[3] Later in the sentencing hearing, one victim did decide to make a statement to the court. The essence of her statement was that just because the victims came from all walks of life does not mean that Carreno-Maldonado should not be punished.

victims that were charged in this case. However, not necessarily for all of them. It took sometimes more effort to get some of these victims to come in and make statements but they eventually did. I'm not sure what else I can say because these crimes are so heinous and so violent it showed a complete disregard and disrespect for these women.

Clerk's Papers (CP) at 84-85 (emphasis added).

¶4 Defense counsel objected to the State's comments, suggesting that the State was failing to comply with the plea agreement and attempting to prejudice Carreno-Maldonado. The State made the following response:

I'm speaking here on behalf of the victims and on behalf of the [S]tate[.] And I'm not going beyond my recommendation in this case. It's an agreed recommendation. M[y] recommendation [for the second degree rape is] 240 months. This is an indeterminate sentencing case. So the Department of Corrections will determine the defendant's actual release date. With regard to the [first degree rape] the [S]tate is recommending the low end of 240 months. And, then with regard to the [second degree assault] the range is 63 to 84 months and the [S]tate is recommending 84 months.

With the comments that I have made they were on behalf of the victims . . . who, again, are here just to observe. And I would ask that you follow the recommendation.

CP at 86. Defense counsel renewed his objection to the State's remarks, but the superior court responded, "Well, the [S]tate's remarks do not have a bearing on this court's decision." CP at 88-89.

¶5 After hearing from Carreno-Maldonado, the superior court stated:

Well, the problem we have here is at the time I listened to the motions to sever this case and at the time I took this plea and reviewed the probable cause statement and I read the presentence report, what we have is a predatory rapist. A man who is basically preying upon vulnerable victims within a geographical radius. The violence of the attacks was escalating. And, if he had not been caught it would have probably been a matter of time before he seriously injured or killed someone.

CP at 91-92. The superior court then sentenced Carreno-Maldonado to concurrent high-end sentences on all counts: 318 months to life for first degree rape; 280 months to life for each of the five second degree rapes; and 84 months for the second degree assault.

¶6 Defense counsel renewed his objection to the prosecutor's remarks and reserved for the record the ability to seek withdrawal of Carreno-Maldonado's guilty plea. The superior court stated:

> The court paid very little attention to [the State's] remarks. I know what her recommendation was. Her arguments played very little part in this court's ruling. It's the court's concerns based on the nature of the attacks, upon the escalating violence, the increasing frequency of the attacks and the fact that he was apparently preying on a segment of the population within a specific area, all of which are hallmarks of a predatory rapist.

CP at 93. Three days later, Carreno-Maldonado moved to withdraw his guilty plea. The superior court denied his motion: "Well I remember this fairly clearly. Quite frankly when this court reviewed the presentence report and given the high incidents and the number of victims and the escalating nature of the attacks and a host of other factors, [the State's comments] played no part in my decision." Report of Proceedings at 10-11.

¶7 Carreno-Maldonado appeals the court's denial of his motion to withdraw his guilty plea. CP at 79.

## ANALYSIS

¶8 On appeal, Carreno-Maldonado asserts that the State breached the plea agreement by undercutting the agreed sentencing recommendation. Specifically, he asserts that the deputy prosecutor addressed the sentencing court using words that mirror the statutory aggravating factors and thus was arguing for an exceptional sentence. He maintains that as a result of the breach, he is entitled to withdraw his guilty plea. The State maintains that it did not breach the

agreement because it has a right to speak on the victims' behalf at the sentencing hearing.

¶9 We address two issues: First, whether the State breached the plea agreement; and second, if it did, is the error harmless?

BREACH OF PLEA AGREEMENT

PROSECUTOR'S COMMENTS ON BEHALF OF THE STATE

¶10 A plea agreement is a contract between the State and the defendant. *State v. Sledge*, 133 Wn.2d 828, 838, 947 P.2d 1199 (1997). Because a defendant gives up important constitutional rights by agreeing to a plea bargain, the State must adhere to the terms of the agreement by recommending the agreed-upon sentence. *Sledge*, 133 Wn.2d at 839. Although the State need not enthusiastically make the sentencing recommendation, "[it] is obliged to act in good faith, participate in the sentencing proceedings, answer the court's questions candidly in accordance with [the duty of candor towards the tribunal] and, consistent with RCW 9.94A.460, not hold back relevant information regarding the plea agreement." *State v. Talley*, 134 Wn.2d 176, 183, 949 P.2d 358 (1998). The State's duty of good faith requires that it not undercut the terms of the agreement explicitly or implicitly by conduct evidencing an intent to circumvent the terms of the plea agreement. *Sledge*, 133 Wn.2d at 840; *State v. Jerde*, 93 Wn. App. 774, 780, 970 P.2d 781, *review denied*, 138 Wn.2d 1002 (1999). We review a prosecutor's actions and comments objectively from the sentencing record as a whole to determine whether the plea agreement was breached. *Jerde*, 93 Wn. App. at 780.

¶11 A breach occurs when the State offers unsolicited information by way of report, testimony, or argument that undercuts the State's obligations under the plea agreement. *See, e.g., State v. Xaviar*, 117 Wn. App. 196, 200-02, 69 P.3d 901 (2003) (breach where prosecutor referred to aggravating sentencing factors and other charges not pursued and called the defendant one of the most "prolific child molest-

ers"); *State v. Van Buren*, 101 Wn. App. 206, 217, 2 P.3d 991 (breach where prosecutor downplayed midrange sentencing recommendation and focused the court's attention on three aggravating factors), *review denied*, 142 Wn.2d 1015 (2000); *Jerde*, 93 Wn. App. at 782 (breach where prosecutor emphasized aggravating factors when obligated to make a midrange sentencing recommendation). But the State does not breach the agreement when it reiterates certain facts necessary to support a high-end standard range recommendation. *See, e.g., State v. Monroe*, 126 Wn. App. 435, 440, 109 P.3d 449 (2005) (finding no breach when the prosecutor recounted salient facts supporting the State's high-end sentencing recommendation and then unequivocally urged the court to accept the State's recommendation), *review granted*, 157 Wn.2d 1016 (2006). Further, the State does not breach the plea bargain when other State agents, for example, a community corrections officer or an investigating officer, argue for an exceptional sentence without the prosecutor's encouragement. *State v. Sanchez*, 146 Wn.2d 339, 349-55, 46 P.3d 774 (2002); *State v. Lindahl*, 114 Wn. App. 1, 11-12, 56 P.3d 589 (2002).

█ █ ¶12 Applying these principles to the record before us, we hold that the State's conduct breached the plea bargain with Carreno-Maldonado. In coming to this conclusion, we focus on the rape counts, which carried the highest sentences and were the focus of the deputy prosecutor's statements at sentencing. Because the State agreed to recommend a low-end sentence of 240 months for the first degree rape, there was no need for the State to recite potentially aggravating facts. As to the midpoint sentencing recommendations for each of the second degree rapes, we recognize that it may be necessary to recount certain potentially aggravating facts in order to safeguard against the court imposing a lower sentence.[4] But a prosecutor must use great care in such circumstances, and the facts

---

[4] We note the minimum term on Carreno-Maldonado's first degree rape charge was 240 months concurrently. Thus, Carreno-Maldonado would be incarcerated for at least that length of time under the State's recommended sentence.

presented must not be of the type that make the crime more egregious than a typical crime of the same class. Here, we conclude that the deputy prosecutor's remarks went beyond what was necessary to support the mid-point sentencing recommendations. Further, we note that the remarks were not a response to argument by defense counsel or an attempt to provide information which the court solicited.

### PROSECUTOR'S COMMENTS ON BEHALF OF THE VICTIMS

¶13 Citing article I, section 35 of the Washington Constitution[5] and RCW 7.69.030, the victim rights statute,[6] the State maintains that its speech on behalf of the victims did

---

[5] Article I, section 35 of the Washington Constitution states:

Effective law enforcement depends on cooperation from victims of crime. To ensure victims a meaningful role in the criminal justice system and to accord them due dignity and respect, victims of crime are hereby granted the following basic and fundamental rights.

Upon notifying the prosecuting attorney, a victim of a crime charged as a felony shall have the right to be informed of and, subject to the discretion of the individual presiding over the trial or court proceedings, attend trial and all other court proceedings the defendant has the right to attend, and to make a statement at sentencing and at any proceeding where the defendant's release is considered, subject to the same rules of procedure which govern the defendant's rights. In the event the victim is deceased, incompetent, a minor, or otherwise unavailable, the prosecuting attorney may identify a representative to appear to exercise the victim's rights.

[6] RCW 7.69.030 reads in relevant part:

There shall be a reasonable effort made to ensure that victims, survivors of victims, and witnesses of crimes have the following rights, which apply to any criminal court and/or juvenile court proceeding:

. . . .

(12) With respect to victims and survivors of victims, to be informed by the prosecuting attorney of the date, time, and place of the trial and of the sentencing hearing for felony convictions upon request by a victim or survivor;

(13) To submit a victim impact statement or report to the court, with the assistance of the prosecuting attorney if requested, which shall be included in all presentence reports and permanently included in the files and records accompanying the offender committed to the custody of a state agency or institution;

(14) With respect to victims and survivors of victims, to present a statement personally or by representation, at the sentencing hearing for felony convictions;

. . . .

(16) With respect to victims and survivors of victims, to present a statement in person, via audio or videotape, in writing or by representation at any

not breach the plea agreement. According to the State, because victims have a right to speak at sentencing, when they do not exercise that right, the State has the right to speak on their behalf. In contrast, Carreno-Maldonado urges us to hold that the State breaches a plea agreement by making *any* statement in addition to the sentence recommendation set out in the plea agreement. This would include facilitating a victim's access to the court by reading a prepared victim impact statement into the record or helping to calm a nervous victim so she can speak to the court herself. We disagree with both parties.

¶14 Article I, section 35 and RCW 7.69.030 give the victims the right to speak or not speak on their own behalf. But they do not provide the State with the right to speak for the victims when they have decided not to speak and have not requested assistance in otherwise communicating with the court, such as by presenting a victim impact statement. Here, the victims were present and able to speak or ask for the prosecutor's assistance if they so desired. The record does not show that the victims asked the prosecutor to serve as their proxy, either by speaking on their behalf, by reading a victim impact statement they had prepared, or by giving the court specific documents supporting a request for restitution.

¶15 In most circumstances, a prosecutor acting as an officer of the court who merely helps a victim exercise her constitutional and statutory right to communicate information to the sentencing court does not breach a plea agreement by that conduct alone. *See Talley*, 134 Wn.2d at 186-87 (finding participation in an evidentiary hearing alone does not undercut the State's agreed sentencing recommendation). But the record before us does not reflect that the deputy prosecutor made the challenged statements as a court officer answering the court's questions or assisting victims in the exercise of these rights. Rather, the remarks were unsolicited advocacy and contrary to the

hearing conducted regarding an application for pardon or commutation of sentence.

State's sentencing recommendation. Thus, we hold that the deputy prosecutor's remarks at Carreno-Maldonado's sentencing, even if made on the victims' behalf, breached the plea agreement.

APPLICABILITY OF A HARMLESS ERROR TEST

¶16 Having determined that the State breached the plea agreement, we must address whether such error can be harmless.

¶17 In *In re Personal Restraint of James*, 96 Wn.2d 847, 849-50, 640 P.2d 18 (1982), our Supreme Court stated:

> When a prosecutor breaches an agreement by failing to recommend probation, a defendant is entitled to withdraw any entered plea or to have the bargain specifically enforced. This right exists even though the sentencing judge was not bound, nor even influenced, by the prosecutor's recommendation.

(Citations omitted.) *James* relied in part on *Santobello v. New York*, 404 U.S. 257, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971). In that case, the State agreed not to make a sentencing recommendation as part of the plea agreement. *Santobello*, 404 U.S. at 258. At sentencing, however, the State made a sentencing recommendation. *Santobello*, 404 U.S. at 259. In response to the defendant's objection, the trial court stated that its decision was not influenced by the recommendation. *Santobello*, 404 U.S. at 259. On these facts, the United States Supreme Court, without doubting the sentencing court's statements that it was not influenced by the breach, held that the interests of justice required that the defendant receive specific performance of the agreement or withdrawal of the plea. *Santobello*, 404 U.S. at 262-63.

¶18 Under *James* and *Santobello*, harmless error review does not apply when the State breaches a plea agreement. This holding accords with other jurisdictions.[7]

---

[7] *Accord Dunn v. Colleran*, 247 F.3d 450, 462 (3d Cir. 2001) (quoting *United States v. Hayes*, 946 F.2d 230, 233 (3d Cir. 1991)); *United States v. Mondragon*, 228 F.3d 978, 981 (9th Cir. 2000); *United States v. Clark*, 55 F.3d 9, 13-14 (1st Cir.

A defendant entering into a plea agreement bargains for a prosecutor's good faith recommendation, not a particular sentence. This is especially true since the court is not bound by the prosecutor's sentencing recommendation. The plea bargaining process requires that both the State and the defendant adhere to their promises. When this process is frustrated, the fairness of the resulting sentencing hearing is seriously called into question. A defendant pleads guilty on a false premise when the State breaches a plea agreement. *Mabry v. Johnson*, 467 U.S. 504, 509, 104 S. Ct. 2543, 81 L. Ed. 2d 437 (1984). That the prosecutor's breach did not affect the court's decision does not alter the fact that a breach occurred. The prosecutor's conduct in failing to make the bargained-for recommendation eliminates the basis for the bargain struck. Thereafter, the State is no longer entitled to benefit from the plea bargain when the defendant has received none. Such an error infects the entire proceeding and, as such, it is a structural error that cannot be harmless. *Neder v. United States*, 527 U.S. 1, 8, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999); *State v. Zimmerman*, 130 Wn. App. 170, 176, 180, 121 P.3d 1216 (2005), *remanded*, 157 Wn.2d 1012 (2006).

¶19 Here, the trial court denied Carreno-Maldonado's motion to withdraw his guilty plea, stating that the State's remarks did not affect its sentencing decision. In so doing, it applied a harmless error test.

¶20 Because the record here clearly establishes that the State breached the plea agreement, we reverse the trial court's order denying Carreno-Maldonado's motion to withdraw his guilty plea. The proper remedy for the State's breach of a plea agreement is to allow Carreno-Maldonado to elect whether to withdraw the guilty plea or seek specific performance. *State v. Miller*, 110 Wn.2d 528, 536, 756 P.2d 122 (1988). Thus, we reverse the trial court's order denying Carreno-Maldonado's motion to withdraw his guilty plea and remand to allow him to elect whether to withdraw his

1995); *United States v. Valencia*, 985 F.2d 758 (5th Cir. 1993); *see also People v. Walker*, 54 Cal. 3d 1013, 1026, 819 P.2d 861, 1 Cal. Rptr. 2d 902 (1991).

guilty plea or seek specific performance of the plea agreement. We note that should Carreno-Maldonado elect to withdraw his plea, he may be held to answer the charges in the original information. *See State v. Oestreich*, 83 Wn. App. 648, 649-50, 922 P.2d 1369 (1996), *review denied*, 131 Wn.2d 1009 (1997) (after court granted defendant's motion to withdraw his guilty plea, the defendant was convicted on the original charges based upon the reinstated original information).

¶21 Reversed and remanded.

HOUGHTON and VAN DEREN, JJ., concur.