IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 30699-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| CLIFFORD ELTON CHEW, | ) | |
| | ) | |
| Appellant. | ) | |

KULIK, J. — Clifford Elton Chew pleaded guilty to possession of methamphetamine with intent to manufacture within 1,000 feet of a school bus zone pursuant to a plea agreement in which the State agreed to recommend a low-end standard range sentence of 84 months. On appeal, he contends the State breached its plea agreement by citing aggravating factors at sentencing that resulted in the imposition of a high-end sentence based on those factors. We agree that the State breached the plea agreement and remand to allow Mr. Chew to withdraw his plea or seek enforcement of the agreement.

FACTS

Clifford Chew was charged by amended information with three violations of the

Uniform Controlled Substances Act, chapter 69.50 RCW. After consulting with the lead detective in the case, the prosecutor agreed to dismiss two of the charges and recommend a low-end standard range sentence of 84 months (60 months plus a 24-month school zone enhancement).

Mr. Chew accepted the offer and entered an *Alford*[1] plea to possession of methamphetamine with intent to manufacture within 1,000 feet of a school bus. In the written guilty plea statement, the State's sentencing recommendation provided: "The prosecuting attorney will make the following recommendation to the judge: asking 84 months agreed all sides." Clerk's Papers (CP) at 133.

Before accepting the plea, the trial court confirmed that Mr. Chew was entering the plea to "take advantage of the plea bargain" and that he understood that the "prosecuting attorney is going to recommend asking for the low side; as agreed to by all sides." Report of Proceedings (RP) at 208, 205. The court then asked Mr. Chew if "anybody made any threats or promises to you to get you to sign [the guilty plea]." RP at 208. Mr. Chew responded that he was "[j]ust . . . hoping to get the 84-month range." RP at 208.

At sentencing, Mr. Chew's defense counsel asked the court to consider allowing Mr. Chew access to drug treatment in prison, including a drug offender sentencing

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

alternative (DOSA), if he qualified under the statute. The prosecutor responded:

> [P]ursuant to [a] plea negotiation the State agreed to recommend 84 months and a day and agree to dismiss two of the three counts. We don't believe that he should be given a DOSA treatment program. His criminal history is probably about as long as I've ever seen in my years of doing this. I think I counted about 19 felonies starting back in the mid-seventies [including] Attempted Murder and Assault 1st, which then put him away for 10 years. And then after that, 2010, he was back at it.
>
> But be that as it may, knowing what we know about meth labs and the hazardous, the hazards that they give, the State believes the 84-month range recommendation is reasonable.

RP at 214-15.

The prosecutor then asked the lead detective to speak, who stated:

> I don't have to educate the Court on the destruction of Methamphetamine or Methamphetamine laboratories. As we know, it is effecting [sic] our community, our society, and actually globally.
>
> What I want the Court to understand is we as law enforcement officers take an inherent risk to investigate these types of crimes in order to give a better quality of life to everybody here, and the citizens within the community.
>
> The people at that hotel that day . . . probably would never know the inherent danger or risk associated with what was going on in room 106; the contamination, the exposure levels of the chemicals within the room.
>
> Again, we as law enforcement take that risk so that people have a safe place to live. I don't feel it's right that we give any sort of leniency towards people who take advantage of our community in this way and bring their dirt here, if you will.
>
> Our position is that we would hope that Mr. Chew takes advantage of some sort of treatment program within the Institutions. We would not agree or be in favor of granting [a] DOSA in any way. . . . This is not his first encounter with Methamphetamine[;] I just ask that you recognize the dangers and inherent danger that this posed not only to him, to us and the

3

community, which is just about everybody as a whole.

RP at 215-16.

After these remarks, defense counsel reminded the court that all parties agreed on an 84-month sentence. However, the court announced it was "not sentencing toward the low end. It will be quite the opposite." RP at 218. It then imposed a sentence of 108 months, citing three reasons: (1) the "horrendous" nature of methamphetamine and its "tremendous" impact on our community, (2) the risk of exposing "innocent people" at the motel room to hazardous materials, and (3) Mr. Chew's high offender score. RP at 217-18.

Mr. Chew appeals, contending the State's presentation at sentencing constituted a breach of the plea agreement.

## ANALYSIS

Mr. Chew argues his due process rights were violated when the prosecutor and the investigating detective recited aggravating facts at the sentencing hearing that undermined the State's promised recommendation for a low-end standard range sentence, effectively breaching the plea agreement. The State counters that the detective was not a party to the plea agreement and, therefore, his remarks did not breach the plea agreement. It also contends that the State's response was proper rebuttal to Mr. Chew's request for a DOSA,

4

which constituted a defense breach of the plea agreement.

Whether a breach of a plea agreement has occurred is a question of law we review de novo. A defendant may raise the issue of a prosecutor's breach of a plea agreement for the first time on appeal. *State v. Xaviar*, 117 Wn. App. 196, 199, 69 P.3d 901 (2003).

Plea agreements are contracts and are analyzed under basic contract principles. *State v. Sledge*, 133 Wn.2d 828, 838, 947 P.2d 1199 (1997). Because a defendant gives up important constitutional rights by agreeing to a plea bargain, the defendant's contract rights implicate due process considerations. *Id.* at 839. "Due process requires a prosecutor to adhere to the terms of the agreement." *Id.* Under this requirement, a prosecutor need not make an agreed sentencing recommendation enthusiastically. *Id.* at 840. A prosecutor is entitled to present relevant facts that might not fully support the recommended sentence. *State v. Gutierrez*, 58 Wn. App. 70, 76, 791 P.2d 275 (1990). A prosecutor may not, however, "undercut the plea bargain 'explicitly or by conduct evidencing an intent to circumvent the terms of the plea agreement.'" *State v. Jerde*, 93 Wn. App. 774, 780, 970 P.2d 781 (1999) (quoting *Sledge*, 133 Wn.2d at 840). In other words, "end runs" around a plea agreement are prohibited.

"'[W]hen the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction

5

cannot stand.'" *Sledge*, 133 Wn.2d at 839-40 (quoting *Mabry v. Johnson*, 467 U.S. 504, 509, 104 S. Ct. 2543, 81 L. Ed. 2d 437 (1984)).

In determining whether a prosecutor violated the duty to adhere to the plea agreement, the reviewing court considers the entire sentencing record and asks whether the prosecutor contradicted the State's recommendation by either words or conduct. *State v. Williams*, 103 Wn. App. 231, 236, 11 P.3d 878 (2000) (quoting *Jerde*, 93 Wn. App. at 780). Neither good motivations nor a reasonable justification excuses a breach. *Xaviar*, 117 Wn. App. at 200. "The focus of this decision is on the effect of the State's actions, not the intent behind them." *Sledge*, 133 Wn.2d at 843 n.7. An objective standard should be applied to determine whether the State has breached the agreement. *Jerde*, 93 Wn. App. at 780.

We first address the State's contention that the detective was not bound by the State's promise to recommend a low-end standard range sentence. Citing *State v. Sanchez*, 146 Wn.2d 339, 46 P.3d 774 (2002), the State contends that as a nonparty to the plea agreement, an investigating officer is not bound by the prosecutor's promises. The State argues that under RCW 9.94A.500, which allows the court to consider statements from investigative law enforcement officers at sentencing, investigators like the detective here have a separate statutory role in the sentencing hearing. It asserts, "[i]t is the statute,

6

which invites law enforcement to the hearing, not the prosecutor." Br. of Resp't at 11.

The State misreads *Sanchez* and minimizes the significant role played by the detective in plea negotiations here. Five of the justices in *Sanchez* agreed that an investigating officer is part of the prosecution team and is, therefore, bound by the prosecutor's agreement under "principles of fairness and agency." *Sanchez*, 146 Wn.2d at 356. "A majority opinion is settled law." *State v. Brooks*, 157 Wn. App. 258, 265, 236 P.3d 250 (2010). As a plurality opinion, *Sanchez* indicates that the detective was bound by the plea agreement and its requirements.

Here, the detective was not only the investigating officer, he also participated in plea negotiations with the defense. When Mr. Chew ultimately agreed to plead guilty, the prosecutor responded by consulting with the detective about the specifics of the plea offer and then stated on the record that "after meeting with our detective," he would amend the information to reflect the negotiated agreement. RP at 201. This close alignment of the investigating detective with the prosecutorial effort highlights the court's reasoning in *Sanchez*. *Sanchez*, 146 Wn.2d at 358.

Given that the detective is bound by the plea agreement, we next address whether the detective's remarks constituted a breach of that agreement. Citing *State v. Carreno-Maldonado*, 135 Wn. App. 77, 143 P.3d 343 (2006), Mr. Chew argues that the detective's

remarks effectively undermined the State's promised recommendation by offering unsolicited information that undercut the plea bargain. He argues that the State breached the plea agreement "by reciting aggravating facts at the sentencing hearing, including through the investigating police officer, resulting in the trial court departing significantly upward from the recommendation on the basis of those very same aggravating facts." Reply Br. of Appellant at 9. The State responds that the prosecutor's and detective's statements were warranted by Mr. Chew's request for a DOSA, which it claims was a defense breach of the plea agreement.

The State overlooks the fact that it is the State that is held to an exacting standard of adherence to a plea agreement. As noted above, because plea agreements implicate fundamental rights of the accused, the State is held to "'meticulous standards of both promise and performance.'" *Palermo v. Warden*, 545 F.2d 286, 296 (2d Cir. 1976) (quoting *Correale v. United States*, 479 F.2d 944, 947 (1st Cir. 1973)). Here, the State's promise to recommend the 84-month sentence was the very inducement to obtain a guilty plea from Mr. Chew and the attendant relinquishment of his constitutional rights to a jury trial, to confront his accusers and present witnesses on his behalf, and the right to have the charges proved against him beyond a reasonable doubt. Mr. Chew's request for drug treatment in prison or a DOSA as part of a standard range 84-month sentence did not

8

breach the plea agreement.

However, even if we deem Mr. Chew's request for a DOSA a breach of the plea agreement, the State's remarks exceeded what was necessary to respond to that request. The detective's statements regarding the extreme dangers of methamphetamine locally and "globally," his explicit rejection of "leniency," his recitation of the dangers to the community and the "inherent risk" to investigating law enforcement officers, and his characterization of Mr. Chew and methamphetamine manufacturers as people who "take advantage of our community . . . and bring their dirt here" were irrelevant to a DOSA request and crossed the line into advocacy for a higher sentence. RP at 215-16.

*Carreno-Maldonado* is instructive. In that case, the prosecutor agreed to recommend a low-end standard range sentence on one of the counts, a midpoint standard range sentence for five counts, and a high-end standard range sentence on another count. *Carreno-Maldonado*, 135 Wn. App. at 79-80. However, at sentencing, the prosecutor characterized the crimes as "'heinous'" and described the defendant as a violent person who "'preyed on what would normally be considered a vulnerable segment of our community.'" *Id.* at 80-81. When defense counsel objected to the remarks, the prosecutor stated that he was sticking to the agreed recommendation and simply speaking on behalf of the victims. The sentencing court imposed concurrent high-end sentences on

all counts.

Division Two of this court held that the State breached the plea agreement, reasoning that the prosecutor's remarks described the crime as "more egregious than a typical crime of the same class" and, therefore, "went beyond what was necessary to support the mid-point sentencing recommendations." *Id.* at 85. It concluded that the remarks were "unsolicited advocacy and contrary to the State's sentencing recommendation." *Id.* at 86-87.

Similarly here, the State's sentencing presentation contradicted its promised recommendation and unnecessarily underscored Mr. Chew's high offender score and his continued involvement in illegal drug behavior. Although the prosecutor stated that he was recommending a low-end standard range sentence, he then recited Mr. Chew's extensive criminal history, including an attempted murder, and characterized this history as one of the longest he had ever seen. This recitation was not relevant to a DOSA request or to support the promised recommendation. Moreover, this emphasis on Mr. Chew's criminal history was unnecessary because the court was already aware of this history.

The prosecutor then brought forth the detective, who, as detailed above, argued that leniency was unwarranted given the seriousness of the crime. His

10

unsolicited testimony defeated the benefit for which Mr. Chew bargained and was likely significantly persuasive due to his integral involvement in the prosecutor's case. Although investigating officers have a statutory role to play at sentencing, the sentencing court did not request information from the detective and there was no purpose in having him testify except to undermine the agreement.

Whether intentional or not, the apparent effect of the State's sentencing presentation was the court's imposition of a sentence well above the low-end of the standard range. The court's very reasons for an upward departure from the recommendation mirrored the points made by the State at sentencing. In fact, the court stated that one of its concerns (putting innocent people as risk) was "exactly the point made by [the detective], and that is this motel room. . . . Think of the people . . . who would have . . . been exposed to this hazardous material." RP at 218. The cumulative effect of the prosecutor's and the detective's remarks at sentencing resulted in a breach of the plea agreement.

When the State breaches a plea agreement, the appropriate remedy is to remand for the defendant to choose whether to withdraw the guilty plea or seek enforcement of the State's agreement. *Jerde*, 93 Wn. App. at 782-83.

11

No. 30699-2-III
*State v. Chew*

The State breached the plea agreement.

We reverse and remand.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Kulik, J.

WE CONCUR:

_____       _____
Brown, J.                                Siddoway, A.C.J.

12