# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>          Respondent,<br><br>     v.<br><br>RONALD WAYNE MACDONALD,<br><br>          Appellant. | No. 69415-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: January 21, 2014 |

LEACH, C.J. — Ronald MacDonald pleaded guilty to second degree manslaughter. He claims that the State breached his plea agreement when an investigating officer addressed the court as a representative of the victim and recommended a sentence greater than that set forth in the plea agreement. Because the plea agreement did not bind the investigating officer, we affirm.

## Background

On June 11, 2012, the State charged MacDonald by amended information with murder in the first degree for killing Arlene Roberts in 1978.[1] After the trial began, the parties entered into a plea agreement. The State amended the

---

[1] At the time of the murder, the original detectives investigated several leads but did not develop a suspect, and the case became inactive. In 2010, technological advances allowed police to match MacDonald's fingerprints with the crime scene. During interviews with MacDonald in June 2011, police obtained additional evidence connecting him to the murder.

information to charge MacDonald with second degree manslaughter, and MacDonald entered an Alford[2] plea.

According to the plea, the parties agreed to recommend that MacDonald serve 16 months of confinement. The State would recommend a 5-year suspended sentence, and MacDonald would recommend a 1-year suspension.[3]

At the sentencing hearing, the prosecutor requested a 5-year sentence suspended on the condition that MacDonald serve 16 months of confinement. The prosecutor then informed the court,

> [Detective Tompkins] has asked me to ask the court if he could speak. Arlene Roberts has no family. Detective Tompkins has— I've made clear to him that I don't want to know what he's going to say. I have no idea what it will be. It doesn't do anything to affect my recommendation. My recommendation is still solidly for 16 months because that's what the agreement was.[4]

The court permitted Tompkins to speak on behalf of the victim.

In his address to the court, Tompkins stated,

> I feel obligated to ask for the maximum sentence in this case.
> This woman was born in 1898, and she has no living family. No one to speak on her behalf. And so[,] I know that you heard a lot in the 3.5 hearing about what happened in Reno in our interview of the defendant, but I also would like to introduce what happened to the victim. And I don't think you saw those, and I'd like to present those to you.

---

[2] North Carolina v. Alford, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[3] The parties recommended these sentences based upon former RCW 9.92.060 (1967). Because the crime here took place in 1978, before the enactment of the Sentencing Reform Act of 1981, chapter 9.94A RCW, the court applied the sentencing rules in effect at that time.

[4] Detective Tompkins was the lead detective in the recent investigation in this case.

Tompkins marked photos of the crime scene as an exhibit to the sentencing hearing. MacDonald objected, arguing, "I think he is an agent of the State. I think that does breach the plea agreement." In overruling this objection, the court explained, "In many cases, if not all criminal cases, particularly serious ones such as this, a victim advocate very frequently speaks to the court on behalf of the victim. There is no victim advocate speaking here today, and I think Detective Tompkins may take that role."

Tompkins argued that the victim "died a horrific death," addressed a number of evidentiary issues that MacDonald raised in his presentence report, and stated, "This happened to somebody, and somebody needs to be held accountable for it. No more and no less. And 16 months is not being held accountable." Following Tompkins's statements, the court stated, "I want to make clear that I allowed Detective Tompkins to speak insofar as he is speaking on behalf of the victim since there's not a victim advocate here today. . . .So I'll take his comments as they pertain to his advocacy on behalf of the victim."

On August 8, 2012, the court imposed the maximum sentence of 60 months of confinement with a minimum sentence of 55 months. The court explained, "I think to impose the sentence recommended by the parties would seriously deprecate the nature of that crime, and would be an affront to justice as well as the memory of Mrs. Roberts." The court noted that it would have imposed the same sentence regardless of Tompkins's statements.

On September 6, 2012, MacDonald filed a CrR 7.8 motion to withdraw his guilty plea, claiming that Tompkins "acted as an advocate to undercut the negotiated plea that he and the prosecutor had negotiated. The State's attempt to use the label of victim advocate to avoid the reality of Detective Tompkins's role and purpose at sentencing does not stand up to scrutiny." On September 14, 2012, the court entered a memorandum opinion and order of transfer to the Court of Appeals.

MacDonald appeals.

## Analysis

"A plea agreement is a contract between the State and the defendant."[5] Because a defendant gives up important constitutional rights by agreeing to a plea bargain, the State must comply with the terms of the agreement by recommending the agreed-upon sentence.[6] The State must not "undercut the terms of the agreement explicitly or implicitly by conduct evidencing an intent to circumvent the terms of the plea agreement."[7] To determine if a prosecutor violated his duty to adhere to a plea agreement, "we review the entire sentencing record and ask whether the prosecutor contradicted by words or conduct the State's recommendation for a standard range sentence."[8] A prosecutor's breach

---

[5] State v. Carreno-Maldonado, 135 Wn. App. 77, 83, 143 P.3d 343 (2006) (citing State v. Sledge, 133 Wn.2d 828, 838, 947 P.2d 1199 (1997)).

[6] Carreno-Maldonado, 135 Wn. App. at 83 (citing Sledge, 133 Wn.2d at 839).

[7] Carreno-Maldonado, 135 Wn. App. at 83 (citing Sledge, 133 Wn.2d at 840; State v. Jerde, 93 Wn. App. 774, 780, 970 P.2d 781 (1999)).

[8] State v. Halsey, 140 Wn. App. 313, 320, 165 P.3d 409 (2007) (citing State v. Williams, 103 Wn. App. 231, 236, 11 P.3d 878 (2000)).

of a plea agreement at sentencing violates due process.[9] Good motivations or a reasonable justification do not excuse a breach.[10]

MacDonald does not claim that the prosecutor breached the plea agreement by her own words or conduct. Rather, he claims that the State violated the plea agreement because, as an "investigating arm" of the prosecutor's office, the investigating officer is bound by the plea agreement. MacDonald cites State v. Sanchez,[11] in which five justices agreed that an investigating officer is part of the prosecution team and is bound by the prosecutor's plea agreement.

Article I, section 35 of the Washington Constitution grants a victim of a crime charged as a felony the right to "make a statement at sentencing . . . . In the event the victim is deceased, . . . the prosecuting attorney may identify a representative to appear to exercise the victim's rights. This provision shall not constitute a basis for error in favor of a defendant in a criminal proceeding." RCW 7.69.030(14) requires a court to make a reasonable effort to ensure that crime victims have the right to present a statement personally or by representation at the sentencing hearing for felony convictions. Before a court imposes a sentence, RCW 9.94A.500(1) requires the court to consider "the risk assessment report and presentence reports, if any, including any victim impact

---

[9] State v. Sanchez, 146 Wn.2d 339, 346, 46 P.3d 774 (2002).
[10] Halsey, 140 Wn. App. at 320 (citing State v. Van Buren, 101 Wn. App. 206, 213, 2 P.3d 991 (2000)).
[11] 146 Wn.2d 339, 46 P.3d 774 (2002) (Chambers, J., concurring/dissenting) (Madsen, C.J., dissenting).

statement and criminal history, and allow arguments from the prosecutor, the defense counsel, the offender, the victim, the survivor of the victim, or a representative of the victim or survivor, and an investigative law enforcement officer" about the appropriate sentence to impose.

In Sanchez, the prosecutor made no recommendation at the sentencing hearing.[12] The victim and her parents addressed the sentencing court.[13] The investigating officer also addressed the court, stating his own opinions and beliefs about the appropriate sentence.[14] Unlike Tompkins, the investigating officer in Sanchez did not purport to address the court on the victim's behalf.

Here, the prosecutor twice recommended a sentence in accordance with the terms of the plea agreement. After making her recommendation, the prosecutor informed the court that Tompkins wished to address the court on the victim's behalf. She explained that she did not know what he would say and that his statements would not affect the State's recommendation.

Notwithstanding the holding in Sanchez that an investigating officer was bound to a prosecutor's plea agreement based on basic principles of fairness and agency,[15] a victim advocate employed by the prosecutor's office is not prohibited from testifying contrary to the prosecutor's recommendation. Here, Tompkins made clear to the court that he spoke solely as a representative of the

---

[12] Sanchez, 146 Wn.2d at 343.
[13] Sanchez, 146 Wn.2d at 343.
[14] Sanchez, 146 Wn.2d at 343.
[15] Sanchez, 146 Wn.2d at 356.

victim. He conveyed the victim's history and the circumstances of her death to the court in that capacity, not as a prosecution team member. Therefore, his request that the court reject the parties' recommended sentence was not part of an effort of the prosecutor's office to affect the sentencing procedure; rather, his purpose was an effort to accord the victim the "due dignity and respect" contemplated by article I, section 35 of the Washington Constitution.

## Conclusion

Because Tompkins addressed the court as an advocate of the victim and not as an agent of the State, his statements did not constitute a breach of the plea agreement. We affirm.

_Leach, C. J._

WE CONCUR: