# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51116-9-II |
| Respondent, | |
| v. | |
| JENNIFER DENISE GRAEN, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Jennifer Graen appeals her conviction and sentence after pleading guilty to second degree dealing in depictions of a minor engaged in sexually explicit conduct, sexual exploitation of a minor, and first degree child molestation. Graen argues that the State breached the plea agreement and that certain community custody conditions were improperly imposed.

We hold that the State breached the plea agreement. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

## FACTS

The State charged Jennifer Graen with four crimes: second degree dealing in depictions of a minor engaged in sexually explicit conduct,[1] (Count 1); second degree possessing depictions

---

[1] RCW 9.68A.050(2)(a); 9.68A.011(4)(f), (g).

of minors engaged in sexually explicit conduct,[2] (Count 2); sexual exploitation of a minor,[3] (Count 3); and first degree child molestation,[4] (Count 4).

Graen took and shared sexually explicit photographs of her five-year-old granddaughter whom she had adopted. She took these photographs in her home and stored them on her computer. Graen used her phone to send and receive photographs depicting her granddaughter and other minors engaged in sexually explicit conduct.

The parties subsequently entered into a plea agreement whereby Graen agreed to plead guilty to Counts 1, 3, and 4. In exchange for the guilty plea, the State agreed to dismiss Count 2 and to recommend Graen be sentenced at the low end of the standard range for all three crimes. The trial court accepted Graen's plea. In a written Statement of Prosecuting Attorney filed with the court, the State recommended the low end of the standard range, stating that it was "only seeking the minimum time on each count, given [Graen's] willingness to pled [sic] and her lack of criminal history." Clerk's Papers at 91. The Department of Corrections (DOC) submitted a presentencing report that did not contain information on the effects of Graen's crimes on her victim.

At Graen's first sentencing hearing, a substitute prosecutor argued that the trial court should impose a sentence at the high end of the standard range. However, the trial court

---

[2] RCW 9.68A.070(2)(a); 9.68A.011(4)(f), (g).

[3] RCW 9.68A.040.

[4] RCW 9A.44.083.

continued the sentencing hearing until the following week. The original prosecutor argued at the subsequent sentencing hearing, which was set before a different judge.

At the sentencing hearing, the prosecutor did not tell the court that the State was recommending a low end sentence. Instead, she stated:

> Essentially, the biggest crime [Graen]'s looking at is in Count 4. That's the lifetime sentence. It's a class A [felony]. So 98 months is, I think, the minimum that she's looking at. When [Graen] originally pled—you know, she had been pretty hard when she comes into court and had, I would say, a little bit of an attitude.
> But when she pled, was the first time I actually saw her have some emotion. She had stated to the law enforcement officers that she was willing to work with them and make amends for her actions. I did see a human side to [Graen] at that point.
> I know the family members are here and would like to speak to the Court as well. I hope that [Graen]'s learned her lesson from things. She certainly will be spending quite an amount of time in prison thinking about them. There were other charges that were not filed.
> Her violations are quite serious, and the little girl in question has had ongoing issues with her behavior. She acts out sexually with people. She doesn't have appropriate boundaries, and I don't know that she'll ever be able to resolve those issues because it started so young for her.
> This is a sad case for everyone. I'm sure the family members can express it more because they are more deeply involved. Her therapist is also here as well. So I'll just ask if people are willing to come forward and who would like to speak.

Verbatim Report of Proceedings (VRP) (Sept. 22, 2017) at 4-5. Family members, a friend, and the victim's therapist all addressed the court to communicate the negative impacts of Graen's actions.

The trial court imposed the top of the range (51 months) on Count 1, the top of the range (102 months) on Count 3, and a midrange sentence of 114 months to life on Count 4. The court also imposed community custody conditions. Graen appeals her conviction and sentence.

ANALYSIS

Graen argues that the State breached the plea agreement by failing to honor its promise to recommend a low end standard range sentence. We agree.

Whether a breach of a plea agreement has occurred is a question of law we review de novo. *State v. Neisler*, 191 Wn. App. 259, 265, 361 P.3d 278 (2015). A defendant may raise the issue of a prosecutor's breach of a plea agreement for the first time on appeal. *State v. Xaviar*, 117 Wn. App. 196, 199, 69 P.3d 901 (2003). Because a defendant gives up important constitutional rights by agreeing to a plea bargain, due process considerations come into play. *State v. Sledge*, 133 Wn.2d 828, 839, 947 P.2d 1199 (1997). "Due process requires a prosecutor to adhere to the terms of the agreement." *Sledge*, 133 Wn.2d at 839.

Although the sentencing recommendation need not be made enthusiastically, "the State has a concomitant duty not to undercut the terms of the agreement explicitly or by conduct evidencing an intent to circumvent the terms of the plea agreement." *Sledge*, 133 Wn.2d at 840. The State breaches the agreement when it "offers unsolicited information by way of report, testimony, or argument that undercuts the State's obligation under the plea agreement." *State v. Carreno-Maldonado*, 135 Wn. App. 77, 83, 143 P.3d 343 (2006). When recommending a midrange sentence, the State may recount potentially negative facts to guard against the court imposing a lower sentence. *Carreno-Maldonado*, 135 Wn. App.at 84. However, when the State recommends a low end of the standard sentencing range, there is "no need for the State to recite potentially aggravating facts." *Carreno-Maldonado*, 135 Wn. App.at 84.

In determining whether a prosecutor has breached a plea agreement's terms, we review the sentencing record as a whole using an objective standard. *Carreno-Maldonado*, 135 Wn.

App. at 83. "When the prosecutor breaches a plea agreement, the appropriate remedy is to remand for the defendant to choose whether to withdraw the guilty plea or specifically enforce the State's agreement." *State v. Jerde*, 93 Wn. App. 774, 782-83, 970 P.2d 781 (1999). "Specific performance requires a reversal of the original sentence and remand for a new sentencing, preferably before a different judge, where the State will make its promised recommendation and the judge will exercise his or her sentencing discretion." *State v. Harrison*, 148 Wn.2d 550, 559, 61 P.3d 1104 (2003).

In *Carreno-Maldonado*, the State agreed to recommend the low end of the standard range on a first degree rape charge and a midrange sentence on additional second degree rape charges. *Carreno-Maldonado*, 135 Wn. App. at 79-80. At sentencing, the prosecutor stated that she was speaking "on behalf" of victims present in the courtroom because they did not wish to speak. *Carreno-Maldonado*, 135 Wn. App. at 80. The prosecutor then stated facts that supported aggravating factors, and the trial court imposed high end sentences on all counts. *Carreno-Maldonado*, 135 Wn. App. at 80-82.

We held that the State breached the plea agreement. *Carreno-Maldonado*, 135 Wn. App. at 84. We stated that because the State agreed to recommend a low end sentence, "there was no need for the State to recite potentially aggravating facts." *Carreno-Maldonado*, 135 Wn. App. at 84. Further, we acknowledged that although the State, when recommending a midrange sentence, may recount potentially negative facts to guard against the court imposing a lower sentence, the prosecutor's unsolicited statements "went beyond what was necessary" to support the midrange recommendation. *Carreno-Maldonado*, 135 Wn. App. at 85.

Here, the prosecutor never stated that the State was recommending a low end sentence for all three counts. Instead, the prosecutor stated that Graen exhibited a "bit of an attitude," that there were other, unfiled charges, and that the violations were "quite serious." VRP (Sept. 22, 2017) at 4-5. The prosecutor went on to describe how the crime had affected the victim and recount the victim's continuing problems. The prosecutor reminded the court of the victim's youth and surmised that the crime would cause lifelong issues. The prosecutor concluded by telling the court that this was "a sad case for everyone," and that family members and the victim's therapist "can express it more." VRP (Sept. 22, 2017) at 5. Even disregarding the high end recommendation made at the first scheduled sentencing hearing, the prosecutor's statements were a breach of the plea agreement.

As we made clear in *Carreno-Maldonado*, when the State recommends a low end sentence within the standard range, the State need not recite potentially negative facts. 135 Wn. App. at 84. Here, there was no need for the prosecutor to present unsolicited facts that appeared designed to generate great sympathy for the victim and antipathy toward Graen.

The prosecutor's discussion of uncharged crimes, Graen's attitude, the seriousness of Graen's offenses, and the victim's potentially lifelong behavioral issues all undercut the State's recommendation. Further, neither DOC's presentencing report nor the State's sentencing recommendation contain information on the effects of Graen's crimes on her victim. Moreover, the prosecutor never stated that the State recommended a low end sentence for all three counts.

The prosecutor provided new victim information that could cause the court to reject a low end recommendation. The prosecutor failed to verbally present a low end recommendation. The prosecutor's unsolicited statements on seriousness, uncharged crimes, and lasting negative

6

effects on the victim were inapposite to the State's agreed recommendation. Effectively, the prosecutor made no recommendation and then spoke to the harmful impacts of and negative aspects surrounding Graen's crimes, undercutting any agreed low end recommendation. Accordingly, we hold that the State breached its plea agreement. As a result, we remand for Graen to choose whether to withdraw her guilty plea or specifically enforce the State's agreement. Should Graen choose specific performance, she is entitled to a new sentencing before a different judge where the State shall make its promised recommendation.[5]

Because we resolve this case on plea agreement grounds, we do not reach Graen's argument regarding community custody conditions. We reverse and remand to the trial court for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Maxa, C.J.

_____
Glasgow, J.

---

[5] Because the sentencing judge has retired, we assume this case will be assigned to a different judge on remand.