2 P.3d 991 (2000)
101 Wash.App. 206
STATE of Washington, Respondent,
v.
Tina Louise VAN BUREN, Appellant.
No. 24308-3-II.
Court of Appeals of Washington, Division 2.
June 16, 2000.
*992 Linda J. King (Court Appointed), Steilacoom, for Appellant.
*993 John W. Ladenburg, Pros. Atty., John Christopher Hillman, Pierce County Deputy Pros. Atty., Tacoma, for Respondent.
SEINFELD, J.
Tina Louise Van Buren pleaded guilty to murder in the first degree pursuant to a plea agreement in which the State promised to recommend a standard range sentence of 292 months. But at sentencing, the State explained that there was evidence to support an exceptional sentence. The trial court then imposed an exceptional sentence of 400 months, citing reasons mentioned by the State. Van Buren appealed to this court, alleging, among other things, that the State breached the plea agreement. Because Van Buren has alleged a manifest error affecting a constitutional right, we review her claim notwithstanding her failure to seek relief below. Further, because this claim has merit, we vacate the sentence and remand with directions to allow Van Buren either to withdraw her guilty plea and proceed to trial or to have a new sentencing hearing at which the State performs as it promised in the plea agreement.

FACTS
Van Buren participated with her boyfriend, Keith Ruch, and another young man in a prolonged assault and the eventual murder of Van Buren's friend, Holly Miller. The assault began at Van Buren's apartment where Ruch hit Miller with a baseball bat and, according to Ruch, Van Buren "smacked" Miller "a couple of times."
Ruch then bound Miller and forced her into the trunk of a car. Van Buren placed a pillow and blanket inside the trunk with Miller. The group then drove to a rural location where Van Buren waited while the two men led Miller away from the car. Ruch then stripped Miller of her clothing and stabbed her repeatedly. Because Miller "just wouldn't die," Ruch beat her to death with a baseball bat or shovel handle and then buried her in a shallow grave.
Van Buren later admitted to a friend that she had been involved in a murder. The friend told the police and the State subsequently charged Van Buren in the alternative with premeditated murder in the first degree or felony murder in the first degree, each with a deadly weapon enhancement. Following plea negotiations, Van Buren agreed to plead guilty, pursuant to State v. Newton, 87 Wash.2d 363, 552 P.2d 682 (1976), to a charge of premeditated first degree murder without a deadly weapon enhancement, and the State agreed to recommend a mid-standard range sentence of 292 months.
In addition to the State's recommendation, the sentencing court had before it a defense brief describing the facts from Van Buren's point of view and requesting a sentence of 20 years, the mandatory minimum. There also was a presentence investigation report that recommended an exceptional sentence of twice the high end of the standard range 666 months. The presentence report writer argued that Van Buren's lack of remorse, lack of regard for human life, and the deliberate cruelty surrounding the crime warranted an exceptional sentence.
At the beginning of the sentencing proceedings, the court noted that it had received "a fair amount of material" from the victim's family. It then asked the State if it had anything to add. After making some preliminary remarks, the State volunteered: "And then if the Court at some point wants to address specifically the issues with regards to the aggravating circumstances that is being requested by the presentence report writer."
Defense counsel responded: "Your Honor, I think I addressed most of them in my brief. The fact that I don't think that there is aggravating circumstances as legally contemplated, I think I adequately addressed that in my brief unless the Court has any questions about that."
After the victim's family addressed the court, the State again volunteered:
Your Honor, the Court has the State's recommendation as listed in the plea form. If the Court is considering an exceptional sentence, as indicated by the presentence report writer, there are various grounds the Court can consider, including the deliberate cruelty to the victim, the lack of remorse on Tina VanBuren's behalf, *994 and certainly the impact of the crime on the victim's family.
Later in the proceeding, the court asked Van Buren if she had anything to say. Van Buren's response: "That I apologize for what happened, but I didn't kill her. I tried to help her. I'm sorry. I never wanted this to happen. That's all[,]" prompted the following argument from the State:
Your Honor, Ms. VanBuren is charged with first degree premeditated murder with the use of a knife and/or bat that is in the amended information. Ms. VanBuren's comment that she tried to help Tina  excuse me. That she tried to help Holly in this case is without merit, and there's no evidence to substantiate this claim that she tried to help her. In fact, she went along with the attempt and placed her in the vehicle, in the trunk of the vehicle. Ms. VanBuren has shown absolutely no remorse for this crime.
The sentencing court then ruled:
There's no question in a murder like this, in my mind, that the standard range is not appropriate for the reasons that have been presented to me. That wouldn't make sense. That wouldn't be fair. The long duration that this assault, kidnapping, and then murder took place, the deliberate cruelty deserves more than that. The effect that this has on the victim's family and on the community that I've already talked about, the fact that there are numerous people who question your remorse in this particular crime.
I've heard from you today. When I looked at all the other materials prior to this time I really questioned whether you really got it or not. And it's for those reasons that I am going to impose an exceptional sentence of 400 months in this particular case.
Van Buren did not seek specific enforcement of the plea agreement nor move to set aside the plea pursuant to CrR 4.2(f) and CrR 7.8. Instead, she appealed directly to this court, arguing that the State breached the plea agreement by improperly emphasizing aggravating factors in support of an exceptional sentence.

I. APPEALABILITY
The State argues that Van Buren, by failing to object or to move to set aside the plea below, waived her argument that the State breached the plea agreement. Alternatively, it contends that the prosecutor acted appropriately.
This court generally will not review an assignment of error raised for the first time on appeal. RAP 2.5(a); State v. Williams, 137 Wash.2d 746, 749, 975 P.2d 963 (1999); State v. Scott, 110 Wash.2d 682, 685-86, 757 P.2d 492 (1988). But we will review an issue if it pertains to a manifest error affecting a constitutional right. RAP 2.5(a)(3); Williams, 137 Wash.2d at 749, 975 P.2d 963; State v. McFarland, 127 Wash.2d 322, 333, 899 P.2d 1251 (1995); Scott, 110 Wash.2d at 686, 757 P.2d 492. "[A]n error is manifest if it results in actual prejudice to the defendant." State v. WWJ Corp., 138 Wash.2d 595, 602-03, 980 P.2d 1257 (1999).
"[A] defendant gives up important constitutional rights by agreeing to a plea bargain[.]" State v. Jerde, 93 Wash.App. 774, 780, 970 P.2d 781 (citing State v. Talley, 134 Wash.2d 176, 183, 949 P.2d 358 (1998); In re Palodichuk, 22 Wash.App. 107, 109-110, 589 P.2d 269 (1978)), review denied, 138 Wash.2d 1002, 984 P.2d 1033 (1999). "Because [plea agreements] concern fundamental rights of the accused, constitutional due process considerations come into play." State v. Sledge, 133 Wash.2d 828, 839, 947 P.2d 1199 (1997).[1] A breach of a plea agreement is a violation of due process. See Mabry v. Johnson, 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984) ("when the prosecution breaches its promise with respect to an executed plea agreement, the defendant *995 pleads guilty on a false premise, and hence his conviction cannot stand"); see also State v. Wakefield, 130 Wash.2d 464, 472, 925 P.2d 183 (1996) (breach of plea agreement is criteria for determining whether "manifest injustice" mandates withdrawal of guilty plea under CrR 4.2(f)).
Thus, Van Buren raises an issue of constitutional magnitude. Further, as we discuss below, it appears likely that the State's comments affected the court's sentencing decision. Thus, she also has shown actual prejudice. See WWJ Corp., 138 Wash.2d at 603, 980 P.2d 1257 (the appellate court previews "the merits of the claimed constitutional error to see if the argument has a likelihood of succeeding").
We note that Division One of this court has held that a failure to move to withdraw a guilty plea or seek specific enforcement bars a defendant from raising the issue on appeal. State v. Giebler, 22 Wash.App. 640, 642-43, 591 P.2d 465 (1979). But we do not find Giebler to be applicable here.
First, Giebler neither mentions RAP 2.5(a)(3) nor discusses the constitutional rights a defendant forfeits when he enters into a plea agreement. Further, the cases that the Giebler court relied upon are silent regarding any doctrine comparable to RAP 2.5(a)(3). People v. Barajas, 26 Cal.App.3d 932, 103 Cal.Rptr. 405, 408 (1972); Barnhart v. State, 34 Md.App. 632, 368 A.2d 1124, 1126 (1977). Finally, the Giebler court seemingly reasoned that there was no breach in that case because the defendant's commission of another offense while awaiting sentencing justified the prosecutor's retreat from the promised sentencing recommendation. 22 Wash.App. at 643, 591 P.2d 465. Consequently, we consider Van Buren's appeal.[2]

II. Breach of the Plea Agreement
A plea agreement is a contract between the State and the defendant. Sledge, 133 Wash.2d at 838-39, 947 P.2d 1199. Basic contract principles of good faith and fair dealing impose upon the State an implied promise to act in good faith in plea agreements. Sledge, 133 Wash.2d at 838-39, 947 P.2d 1199. Due process concerns reinforce the State's duty to comply with plea agreements. Sledge, 133 Wash.2d at 839-40, 947 P.2d 1199.
Accordingly, a plea agreement obligates the State to recommend to the court the sentence contained in the agreement. Talley, 134 Wash.2d at 183, 949 P.2d 358; Sledge, 133 Wash.2d at 840, 947 P.2d 1199. This obligation does not, however, require the State to make the sentencing recommendation enthusiastically. Talley, 134 Wash.2d at 183, 949 P.2d 358; Sledge, 133 Wash.2d at 840, 947 P.2d 1199. But, at the same time, the State must not undercut the terms of the agreement. Talley, 134 Wash.2d at 183, 949 P.2d 358; Sledge, 133 Wash.2d at 840, 947 P.2d 1199; Jerde, 93 Wash.App. at 780, 970 P.2d 781. The State can undercut a plea agreement either explicitly or implicitly through conduct indicating an intent to circumvent the agreement. Sledge, 133 Wash.2d at 840, 947 P.2d 1199; Jerde, 93 Wash.App. at 780, 970 P.2d 781; Palodichuk, 22 Wash.App. at 110, 589 P.2d 269.
We apply an objective standard in determining whether the State breached a plea agreement "`irrespective of prosecutorial motivations or justifications for the failure in performance.'" Jerde, 93 Wash.App. at 780, 970 P.2d 781 (quoting Palodichuk, 22 Wash.App. at 110, 589 P.2d 269); see also Sledge, 133 Wash.2d at 843 n. 7, 947 P.2d *996 1199 ("The focus of this decision is on the effect of the State's actions, not the intent behind them."). "The test is whether the prosecutor contradicts, by word or conduct, the State's recommendation for a standard range sentence." Jerde, 93 Wash.App. at 780, 970 P.2d 781 (citing Talley, 134 Wash.2d at 187, 949 P.2d 358). In making this determination, we view the entire sentencing record. Jerde, 93 Wash.App. at 782, 970 P.2d 781.
In Sledge, the prosecutor insisted on an evidentiary hearing, notwithstanding the juvenile defendant's guilty plea. 133 Wash.2d at 831, 947 P.2d 1199. At the hearing, the State announced its standard range sentencing recommendation but then brought forth a probation officer and parole officer, both of whom testified in support of factors supporting an exceptional disposition. Sledge, 133 Wash.2d at 831, 833-36, 947 P.2d 1199. The State's examination of both witnesses focused on facts supporting aggravating factors. Sledge, 133 Wash.2d at 833-36, 947 P.2d 1199. Then the State summarized the evidence supporting an exceptional disposition. Sledge, 133 Wash.2d at 837, 947 P.2d 1199.
The Supreme Court held that the State's conduct breached the plea agreement. Sledge, 133 Wash.2d at 843, 947 P.2d 1199. As the Sledge court reasoned:
A fair reading of the State's direct examination of [witnesses] and negative summation reveals the State's unmistakable advocacy for an exceptional sentence. Even though the State told the trial court it was recommending a standard range sentence, it violated its duty of good faith and fair dealing by undercutting the recommendation, and thereby breached the plea agreement.
133 Wash.2d at 843, 947 P.2d 1199.
In Jerde, two prosecutors announced the State's standard range recommendation based on a plea agreement, but then they went on to repeatedly emphasize and advocate factors that would support an exceptional sentence. 93 Wash.App. at 777-79, 970 P.2d 781. This court observed three similarities between the case before it and Sledge:
(1) both prosecutors [here] unnecessarily commented on a written presentence report that was already before the court; (2) the prosecutors underscored aggravating factors; and (3) the prosecutors maintained that the State was adhering to its plea agreement but clearly behaved otherwise. The court in Sledge found the actions of the prosecutor to be a transparent attempt to sustain an exceptional sentence.
Jerde, 93 Wash.App. at 782, 970 P.2d 781.
In Talley, the defendant did not allege a breach of the plea bargain agreement. 134 Wash.2d at 183, 949 P.2d 358. The issue before the Supreme Court was simply whether a prosecutor's participation in a court-ordered evidentiary sentencing hearing undercut the plea agreement. Talley, 134 Wash.2d at 183, 949 P.2d 358. The Talley court held "that while the deputy prosecutor is obliged to make the agreed upon sentencing recommendation to the sentencing court at the sentencing hearing, mere participation by the deputy in an evidentiary hearing does not undercut the State's agreed upon recommendation." 134 Wash.2d at 186, 949 P.2d 358.
But the Talley court also added a cautionary observation:
Although we conclude that the prosecutor's participation in an evidentiary hearing does not, by itself, violate the plea agreement, we recognize that the State could violate the agreement by advocating for an exceptional sentence in the way that it presents evidence at the evidentiary hearing and in making its sentencing recommendation to the court. While, as we have observed, merely presenting relevant evidence to the sentencing court and responding to its inquiries is an appropriate fulfillment of the prosecutor's duty as an officer of the court, a deputy prosecutor could easily undercut the plea agreement by placing emphasis on the evidence that supports findings that aggravating factors are present.
134 Wash.2d at 186, 949 P.2d 358.
The Talley court noted that there is no "rule of general application" to guide an appellate court in determining whether the State adhered to or undercut a plea agreement. Talley, 134 Wash.2d at 187, 949 P.2d *997 358. But the Talley, Sledge, and Jerde courts all indicated their concern about conduct by the State that crosses the line from objectively reporting facts that may have some bearing on the existence of aggravating factors to outright advocacy for those factors. Here, we find, on balance, that the State crossed that impermissible boundary.
First, the State made only a fleeting and tangential reference to its sentencing recommendation, stating: "Your Honor, the Court has the State's recommendation as listed in the plea form." Then, without prompting from the sentencing court, the State noted: "If the Court is considering an exceptional sentence, as indicated by the presentence report writer, there are various grounds the Court can consider, including deliberate cruelty to the victim, the lack of remorse on Tina VanBuren's behalf, and certainly the impact of the crime on the victim's family."
The references to deliberately cruelty and lack of remorse unnecessarily highlighted two aggravating factors proposed in the presentence report. See Jerde, 93 Wash.App. at 782, 970 P.2d 781 ("both prosecutors unnecessarily commented on a written presentence report that was already before the court, ... the prosecutors underscored aggravating factors"). But standing alone, these references did not cross the line into advocacy. See Jerde, 93 Wash.App. at 777-78, 970 P.2d 781 (prosecutors elaborated on facts supporting aggravating factors).
The unsolicited reference to the impact on the victim's family, however, was more egregious; this factor was not even mentioned in the presentence report as a basis for an exceptional sentence. See Jerde, 93 Wash. App. at 782, 970 P.2d 781 ("both prosecutors... added an aggravating factor not found in the presentence report"). Although the State did not recite the facts underlying the impact factor, it gave the court its unsolicited legal interpretation of the facts and thereby advocated for that factor. See Jerde, 93 Wash.App. at 782, 970 P.2d 781 ("Without prompting from the court, the first prosecutor laid the foundation by articulating several factual and legal arguments that would support an exceptional sentence.").
Finally, the State told the sentencing court that Van Buren's tepid apology was without merit and that she had "shown absolutely no remorse for this crime." On appeal, the State, citing State v. Coppin, 57 Wash.App. 866, 875, 791 P.2d 228 (1990), argues that this was a fair response to Van Buren's request for a low-end sentence.
A prosecutor may reference a defendant's prior bad acts in support of an argument that the sentencing judge should impose the maximum standard range sentence. Coppin, 57 Wash.App. at 875, 791 P.2d 228. In Coppin "[t]he prosecutor reiterated, on numerous occasions, that the recommended sentence of 102 months was itself a severe penalty, constituting the maximum under the standard range for the offenses." 57 Wash.App. at 875, 791 P.2d 228. But here, in contrast to Coppin, the prosecutor did not preface or qualify her remarks with any reference to the standard range or the plea agreement recommendation. See Jerde, 93 Wash.App. at 777-79, 782, 970 P.2d 781 (prosecutors breached agreement even though they reiterated the agreed sentencing recommendation); see also Sledge, 133 Wash.2d at 843, 947 P.2d 1199.
Moreover, Van Buren's sentencing brief did not argue remorse as a mitigating factor justifying a lower-end sentence. Although it appears that the prosecutor's comment was a spontaneous and direct response to Van Buren's weak apology, it also amounted to advocacy for an aggravating factor set forth in the presentence report  lack of remorse.
Although the State's conduct here was not as flagrant as it was in Sledge and Jerde, it appears that once the State sensed the court was considering an exceptional sentence, it crossed the line into advocacy. In summary, the State: (1) downplayed its recommendation; (2) specifically focused the court's attention on two aggravating factors contained in the presentence report; (3) proposed an aggravating factor not specifically cited within the presentence report; and (4) argued the validity of one of the aggravating factors.
On balance, the State helped the court justify an exceptional sentence. Consequently, the State undermined and thereby breached the plea agreement. Sledge, 133 *998 Wash.2d at 843 n. 7, 947 P.2d 1199 ("Keeping in mind the paramount due process rights of the defendant, however, we hold simply the State may not act so as to undermine a plea agreement to which it is a party.").

III. REMEDY
"When the prosecutor breaches a plea agreement, the appropriate remedy is to remand for the defendant to choose whether to withdraw the guilty plea or specifically enforce the State's agreement." Jerde, 93 Wash.App. at 782-83, 970 P.2d 781; see also State v. Wakefield, 130 Wash.2d 464, 473-74, 925 P.2d 183 (1996). Consequently, we remand to the trial court for a hearing to determine Van Buren's election: she may withdraw her plea and proceed to trial or she may demand specific performance of the plea agreement. If she elects the latter, she is entitled to a new sentencing hearing in front of a different judge. At this hearing, the State must present the agreed upon sentencing recommendation without equivocation. In re Matter of Powell, 117 Wash.2d 175, 199, 814 P.2d 635 (1991); State v. Henderson, 99 Wash.App. 369, 379, 993 P.2d 928 (2000); State v. Morley, 35 Wash.App. 45, 48, 665 P.2d 419 (1983). Of course, the sentencing court retains the discretion to accept or reject the recommendation. In re Breedlove, 138 Wash.2d 298, 309, 979 P.2d 417 (1999); Henderson, 99 Wash.App. at 379, 993 P.2d 928.
Our decision renders it unnecessary to consider Van Buren's other assignments of error.
Accordingly, we vacate the sentence and remand for further proceedings consistent with this opinion.
HOUGHTON, J., and HUNT, A.C.J., concur.
NOTES
[1] In Jerde, defense counsel objected to the State's comments on aggravating factors, but he sought an evidentiary hearing only. 93 Wash.App. at 779, 970 P.2d 781. In Sledge, defense counsel raised one objection to the State's examination of a probation officer but otherwise did not seek any corrective action from the trial court. 133 Wash.2d at 835, 947 P.2d 1199. Neither defendant requested a choice of remedies. Nonetheless, the appellate court allowed review in both cases.
[2] Although precedent controls our RAP 2.5(a)(3) analysis, WWJ, 138 Wash.2d at 602-03, 980 P.2d 1257; McFarland, 127 Wash.2d at 333, 899 P.2d 1251; State v. Contreras, 92 Wash.App. 307, 313-14, 966 P.2d 915 (1998); State v. Lynn, 67 Wash. App. 339, 345-46, 835 P.2d 251 (1992), it results in a process where a defendant suffers no penalty for failing to avail himself of the existing remedies before the sentencing judge, who is in the best position to cure the breach. Instead, a defendant who pleads guilty but believes there is sentencing error but who also believes a lengthy sentence is inevitable in any event, may appeal directly to the appellate court. A defendant who challenges the sentence before the trial court will be immediately faced with the decision of revoking his plea and going to trial or being re-sentenced before a different judge. By instead appealing, he will be able to delay this choice for the approximate two years of the appeal process, by which time the State's witnesses may be unavailable and/or memories may have faded. See generally State v. Ford, 137 Wash.2d 472, 488-90, 973 P.2d 452 (1999) (Talmadge, J., dissenting).