IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 32898-8-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| MICHAEL DEE NEISLER, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Michael Neisler appeals his exceptional sentence of 72 months' incarceration after his guilty plea to two counts of vehicular assault, with the second count involving an aggravating factor. We disagree with his central contention that the State breached the plea agreement but accept the State's concession that the trial court erred in classifying the vehicular assaults as "serious violent offenses" and imposing 36 months of community custody. We therefore affirm Mr. Neisler's 72-month sentence but remand for the sentencing court to correctly classify the vehicular assaults as "violent offenses" and reduce the community custody term from 36 months to 18 months.

FACTS

On June 29, 2013, Michael Neisler was driving southbound on State Route 25 in Stevens County when he crossed the centerline while attempting to negotiate a turn, striking a car driven by Amy Enns. Amy Enns was badly injured, and her passenger Caroline Enns was severely injured. Toxicology tests showed Mr. Neisler's blood-alcohol content to be .19 percent, or nearly 2 ½ times the legal limit of .08 percent. The State brought two charges against Mr. Neisler. In count 1, the State charged Mr. Neisler with vehicular assault against Amy Enns; and in count 2, the State charged Mr. Neisler with vehicle assault against Caroline Enns, with an aggravating factor that her injuries substantially exceeded the level of bodily harm necessary to satisfy the offense.

The parties reached a plea agreement wherein Mr. Neisler would plead guilty to both counts, including the aggravating factor in count 2. In exchange, the State agreed to "defer to the Court with respect to sentencing." Clerk's Papers (CP) at 20.

On October 21, 2014, and prior to pleading guilty, the court reviewed the plea agreement with Mr. Neisler. Notably, Mr. Neisler was informed that the standard sentence range was 12+-14 months, with a maximum sentence of 10 years. After being fully informed of his rights, he pleaded guilty to both counts.

2

The parties proceeded to sentencing. Both victims exercised their statutory right to give a statement to the court. Although both victims discussed how their injuries resulted in a profound impact on their lives, we focus on Caroline Enns's statement, read to the court by her sister:

> MS. BORROWS: So these are my sister's words I'm reading for her. Honorable Judge, I must first say that addressing you today is a difficult task for me for several reasons. First, you just can't put into words the devastation that this crash has caused. It's not an accident. Dropping a plate is an accident. Willfully operating a vehicle while impaired is an act of violence and it's abusive.
>
> Secondly, it's extremely uncomfortable for me to be in unfamiliar surroundings. I have no sight whatsoever. As you can see, every step . . . in [my] walker, is a painful motion and [I'm] in constant fear of falling and seriously injuring [myself] more. Judge, I need you to hear me tell this Court in summary how the events of June 29, 2013, has [sic] changed my life forever.
>
> In my mind and in my sleep I continue to see that oncoming truck. The impact was so severe I was sure I was going to die. I thought there was no way to survive the force of that impact. In fact I did die. I felt my body lift and begin to float upwards until I felt hands on my shoulders forcing me back to earth and telling me you're not done yet. The medics were reviving me with [cardio pulmonary resuscitation] pressing down on my already broken rib cage. Five days later I awoke with pain that I cannot describe. My most serious injuries included having my right elbow sheared right off, my left ankle, both knees, both shoulders completely crunched. My bones were shattered like Corn Flakes. In fact, the doctors told me they had to vacuum bone out of my body. Both my arms had multiple breaks. Both my legs were broken in so many places it has required plates, screws and bars just to keep them in line. Each of my eight surgeries have lasted anywhere from five to eight hours. Each recovery more difficult than the last.
>
> But the worst part of this vehicular abuse is that I'm completely blind. June 29, 2013 is the last time I saw anything and it was that

3

oncoming truck and the scattered windshield in front of my face. I miss my sight more than I can explain. I am in constant darkness. No light. No shadows. I long to see my family and I grieve that I will never see my granddaughter. I was an artist and now my way of life is altered forever. How am I to live an independent life when I'm blind and so severely physically disabled? This violent act has not only grossly altered my life but the life of my 26 year old daughter that is now serving as my way finder. I rely on her support so heavily that she has given up her own life for the past sixteen months. She has lot her job, her boyfriend and her own life plan. My own boyfriend of seven years has also ended our relationship. His future was not looking promising with a partner that has such complex needs. My family has given up time, money, work and has experienced massive stress along with me. The effect of Mr. Neisler's willful act to drink and drive cannot be measured. It's too deep, too wide to put a price on or a prison sentence time for him to. My hospital bills alone are nearly $650,000 U.S. I will be paying for these for the rest of my life.

My hope in coming here today is that Mr. Neisler be charged to the full extent for his violent crimes against me and that the State of Washington really does begin to take a very serious look at their responsibility on the drinking and driving laws of this state. My future is forever changed. There is no amount of apologies that can give me my sight, mobility or quality of life back. Mr. Neisler needs to experience a modicum of life alterations so that he can never do this again to anyone else. Thank you.

Report of Proceedings (RP) at 9-10.

After the court heard from various other persons, the State made the following

comments:

Your Honor, so often, I think, when we deal with these kinds of cases in our roles as prosecutors, defenses and judges, we kind of get a little cold and callous and I can't even imagine what these two women have been going through for the past year. And I can recall one specific conversation that I had with [one of the victims] at one point over the summer. And after I

4

asked the question, I realized how silly it sounded and I asked, *how much
time is enough?* . . . But I'm glad that this has happened. That we haven't
been put through a trial. I don't think either one of [the victims] was
looking forward or wanting to have to get up and testify. . . . I hope during
my career that I never have a case like this again. And this, again, and I
apologize if it sounds callous, *but in a lot of ways this* is *more severe than a
vehicular homicide* in that these women have to continue to live with
this. . . . And we ultimately defer to Your Honor. You've been doing this a
lot longer than all of us have and we would defer to Your Honor's wisdom
and past to look at the facts of this case and determine what an appropriate
sentence would be.

RP at 12-13 (emphasis added). In response, defense counsel stated, "We would ask that

the Court impose an exceptional sentence. We realize that 12 months to 14 months isn't

fitting in this case. We would ask the Court to go higher than that, to go 16 months or 18

months." RP at 15. The victims each requested that the court impose the 120 month

maximum sentence.

The court instead imposed a 72-month exceptional sentence. In sentencing Mr.

Neisler, the court weighed his actions against past sentences imposed in the county and

other cases where exceptional sentences were imposed. In its memorandum on the

factors considered in imposing a sentence above the standard range, the court stated

"[t]he prosecuting attorney made no recommendation." CP at 45. In addition, the

sentencing court determined the offenses were "serious violent offenses," and imposed 36

months of community custody.

5

Mr. Neisler appeals. He argues (1) the State violated the terms of the plea agreement, and (2) the sentencing court erred in classifying the offenses as "serious violent offenses" and imposing 36 months of community custody. The State concedes that the offenses should have been classified as "violent offenses," with a corresponding community custody term of 18 months.

## ANALYSIS

The issue is whether the State breached the plea agreement. Mr. Neisler contends the State breached the plea agreement by commenting on the nature of the victims' injuries and by inferring no length of incarceration was sufficient.

Because a defendant who enters into a plea agreement gives up important constitutional rights, a defendant can raise the issue of the State's breach for the first time on appeal, as Mr. Neisler does here. *State v. Xaviar*, 117 Wn. App. 196, 199, 69 P.3d 901 (2003). Whether a breach of a plea agreement occurred is an issue appellate courts review de novo. *State v. MacDonald*, 183 Wn.2d 1, 8, 346 P.3d 748 (2015).

A plea agreement is a contract between the State and the defendant. *State v. Sledge*, 133 Wn.2d 828, 838, 947 P.2d 1199 (1997) (quoting *State v. Mollichi*, 132 Wn.2d 80, 90, 936 P.2d 408 (1997)). As plea agreements concern fundamental rights of the accused, due process requires the State to adhere to the agreement by recommending the

agreed-upon sentence. *Id.* at 839. Although the State need not enthusiastically make the sentencing recommendation, it must act in good faith, participate in the sentencing proceedings, answer the court's questions candidly, and hold back no relevant information regarding the plea agreement. *Id.* at 840.

Concomitantly, the State is also obligated not to "undercut the terms of the agreement explicitly or by conduct evidencing an intent to circumvent the terms of the plea agreement." *Id.* A breach occurs where the State offers unsolicited information via "report, testimony, or argument that undercuts the State's obligations under the plea agreement." *State v. Carreno-Maldonado*, 135 Wn. App. 77, 83, 143 P.3d 343 (2006); *see, e.g., id.* at 84-85 (breach where the State described the crime as more egregious than a typical crime of the same class, thus going beyond what was necessary to support the mid-range sentencing recommendation); *Xaviar*, 117 Wn. App. at 200-02 (breach where the State referred to aggravating sentencing factors, other charges not pursued, and called the defendant "one of the most prolific child molesters" indicated lack of support for standard range sentence); *State v. Williams*, 103 Wn. App. 231, 236-39, 11 P.3d 878 (2000) (breach where the State's sentencing memorandum and oral argument suggested the court go beyond the high-end recommendation and made unsolicited references to statutory aggravating factors, which trial judge adopted in order to impose an exceptional

7

sentence); *State v. Van Buren*, 101 Wn. App. 206, 217, 2 P.3d 991 (2000) (breach where the State downplayed mid-range sentencing recommendation, focused the court's attention on two aggravating factors contained in the presentence report, proposed an aggravating factor not addressed in the report, and argued the validity of one of the aggravating factors); *State v. Jerde*, 93 Wn. App. 774, 782, 970 P.2d 781 (1999) (breach where the State emphasized aggravating factors when obligated to make a mid-range sentence recommendation).

When determining whether the State's comments breached the plea agreement, appellate courts apply an objective standard, looking at the sentencing record as a whole. *Jerde*, 93 Wn. App. at 780, 782. The test is whether the State's words or conduct, without looking to the intent behind them, contradict the State's recommendation. *Id.* at 780. If the State breaches a plea agreement, harmless error review is not applicable. *MacDonald*, 183 Wn.2d at 8. Rather, the appropriate remedy is to remand for the defendant to choose whether to withdraw the guilty plea or seek enforcement of the State's agreement. *Jerde*, 93 Wn. App. at 782-83.

Here, after the sentencing court heard from both victims, the State made the two complained-of remarks: (1) "And I can recall one specific conversation that I had with [one of the victims] at one point over the summer. And after I asked the question, I

realized how silly it sounded and I asked, *how much time is enough?"* and (2) "And this, again, and I apologize if it sounds callous, *but in a lot of ways this is more severe than a vehicular homicide in that these women have to continue to live with this.*" RP at 12-13 (emphasis added). Mr. Neisler argues these remarks (1) inferred no amount of imprisonment would suffice and (2) overemphasized the nature of the injuries.

In so arguing, Mr. Neisler analogizes his case to *Sledge*. In *Sledge*, the State insisted on an evidentiary hearing notwithstanding a plea agreement to recommend a standard range disposition.[1] *Sledge*, 133 Wn.2d at 831. At the hearing, the State announced its standard range disposition recommendation but then brought forth a probation officer and a parole officer, both of whom testified in support of factors supporting an exceptional disposition. *Id.* at 831-36. The State then summarized the evidence supporting an exceptional disposition. *Id.* at 837-38. The court ultimately entered a manifest injustice finding, supporting a disposition of 103 weeks.

*Sledge* is distinguishable. There, the State agreed to recommend a standard range disposition of 21 to 28 weeks but insisted on a disposition hearing in which it called witnesses to testify concerning aggravating factors which then caused the court to impose an exceptional disposition of 103 weeks. *Id.* at 830. In contrast here, both parties agreed

---

[1] In juvenile cases, the term "disposition" is used instead of "sentencing."

an exceptional sentence was appropriate given the nature of Caroline Enns's injuries.

Therefore, the State was not prohibited from arguing and setting forth facts in support of

an exceptional sentence. Although the plea agreement required the State to defer to the

court with respect to sentencing, there was no agreement, expressed or implied, that the

State would minimize Caroline Enns's true injuries to lead the court toward a "low end"

aggravated sentence, such as that requested by defense counsel. We hold the State did not

breach the plea agreement.

We affirm Mr. Neisler's 72-month sentence but remand for the trial court to

correct the nature of the offenses to "violent offenses" and designate a corresponding 18-

month community custody term.

Lawrence-Berrey, J.

WE CONCUR:

Siddoway, C.J.

Korsmo, J.

10