# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75206-5-1 |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| RYAN DANIEL ERKER, | ) | |
| Appellant. | ) | FILED: October 2, 2017 |

APPELWICK, J. — Erker appeals his felony murder sentence of 233 months. He argues that the prosecutor undercut the plea agreement at the sentencing hearing by offering prejudicial comments about the felony murder rule. We affirm.

## FACTS

Ryan Erker was charged with murder in the second degree with a firearm enhancement. He faced the standard range of imprisonment of 123 to 220 months, plus 60 consecutive months for the firearm enhancement. He pleaded guilty as charged on March 18, 2016. The plea was entered after almost two years of negotiations between the State and Erker. Erker's presentence report stated that part of the delay was due to his "great difficulty coming to terms with and grasping the felony murder rule." As part of the plea bargain, the State agreed to recommend the low end of the standard range, 183 months, including the firearm enhancement. At the plea and sentencing hearings, the State recommended the low end rage of 183 months.

At the sentencing hearing on April 22, 2016, the State listed three reasons for the agreed sentencing recommendation. First, Erker accepted responsibility with his guilty plea. Second, Erker provided some assistance to law enforcement in the case. Third, the State had no evidence that Erker participated in the homicidal event. In response to a statement by the defense in the presentence report, the State went on to comment on the purpose of the felony murder rule.[1]

The prosecutor stated,

> And I'd like to make a few comments about [the felony murder rule] that are not meant at all to undermine our agreed recommendation, but that are meant to edify him, and edify the families as to why we have this felony murder ruling. Because it's tempting for people to think well, felony murder; I arrange a felony, a burglary, and unintended things happen, something goes wrong. Why should I be on the hook for something that somebody else did?
>
> But here's what felony murder is really about. It's—it's really about willingness to disregard the cost of the crime, the perfectly foreseen cost of human life when one arranges a home invasion burglary and robbery. . . .
>
> And in some ways, that disregard for another's life—it's no different than the sentiment behind an intentional murder.

---

[1] RCW 9A.32.050(1) states,

A person is guilty of murder in the second degree when:

(a) With intent to cause the death of another person but without premeditation, he or she causes the death of such person or of a third person; or

(b) He or she commits or attempts to commit any felony, including assault, other than those enumerated in RCW 9A.32.030(1)(c), and, in the course of and in furtherance of such crime . . . causes the death of a person other than one of the participants.

The court then heard statements from the victim's mother and fiancé. Erker's brother and a jail chaplain spoke, conveying Erker's remorse. Erker also made a statement.

After hearing the statements, the trial court imposed a mid-range sentence of 173 months, plus the 60 months for the firearm enhancement, for a total of 233 months. And, the trial court explained why it deviated from the agree recommendation and imposed a mid-range sentence. It explained that the court approaches sentencing by starting in the middle of the range, and then goes up or down depending on the factors. The trial court pointed out that the State recommended the very low end of the range, and stated that it understood why it was reasonable for the State to do so. The court also noted that it was entitled to impose a sentence different from the agreed recommendation. But, the trial court noted it was moved by the statements by the victim's family members. Because of the egregious consequences of this case, the trial court said it would tend to go above the middle of the range, but that the mitigating factors of Erker's actions brought it to a middle of the range sentence. Erker appeals.

## DISCUSSION

Erker's primary argument on appeal is that the State undercut his plea agreement. He asserts that the State must strictly adhere to the terms of a plea agreement, and that the State breached the plea agreement by offering unsolicited information that contradicted its obligations.

We generally will not review an issue raised for the first time on appeal. RAP 2.5(a). However we will review an argument not raised below if it concerns a manifest error affecting a constitutional right. RAP 2.5(a)(3); State v. Williams, 103 Wn. App. 231, 234, 11 P.3d 878 (2000). Plea agreements concern fundamental rights of the accused, and constitutional due process requires prosecutors to follow the terms of the agreement. State v. Sledge, 133 Wn.2d 828, 839, 947 P.2d 1199 (1997). Therefore, this case involves a constitutional right. Whether the State breached the plea agreement is an issue we review de novo. State v. Neisler, 191 Wn. App. 259, 265, 361 P.3d 278 (2015), review denied, 185 Wn.2d 1026, 377 P.3d 708 (2016).

Erker argues that the State breached the plea agreement when it offered unsolicited information about the felony murder rule at the sentencing hearing. He argues that the prosecutor spoke about felony murder to make Erker seem more culpable than he was willing to admit. He argues further that the prosecutor explained the felony murder rule, even though it was not germane to the sentencing hearing, to encourage the court to reject the agreed recommendation and impose a greater sentence. He likens the prosecutor's statements to reciting potentially aggravating facts to the court and asserts that these comments undercut the agreed recommendation and breached the plea agreement.

The State must follow the terms of the plea agreement. Sledge, 133 Wn.2d at 839. A prosecutor fulfills this obligation by making the agreed sentencing recommendation. Id. at 840. Although the State need not enthusiastically make

the sentencing recommendation, it must participate in the sentencing proceedings, answer the court's questions candidly, and not hold back relevant information regarding the plea agreement. Id. The State must not undercut the terms of the plea agreement with the defendant explicitly or implicitly by conduct that indicates an intent to circumvent the agreement. Williams, 103 Wn. App. at 236; Sledge, 133 Wn.2d at 840-41. The State breaches the plea agreement when it offers unsolicited information that undercuts the agreed recommendation. State v. Carreno-Maldonado, 135 Wn. App. 77, 83, 143 P. 3d 343 (2006). Specifically, the State violates the agreement when the prosecutor goes beyond the agreed recommendation and emphasizes aggravating sentencing factors at the sentencing hearing. State v. Van Buren, 101 Wn. App. 206, 216, 2 P.3d 991 (2000); see State v. Jerde, 93 Wn. App. 774, 782, 970 P.2d 781 (1999).

We apply an objective standard to determine whether the State breached the plea agreement irrespective of prosecutorial motivations or justifications. Williams, 103 Wn. App. at 236. We look at the sentencing record as a whole. Carreno-Maldonado, 135 Wn. App. at 83.

In Van Buren, the court found that the State crossed the line from objectively reporting facts that may indicate aggravating factors to outright advocating for those factors. 101 Wn. App. at 215. The State made only a fleeting reference to its sentencing recommendation. Id. The State then told the court that there were various grounds to consider an exceptional sentence, including deliberate cruelty to the victim, a lack of remorse, and the impact on the victim's family. Id. at 215-

16. The court emphasized that, standing alone, the prosecutor's reference to facts mentioned in the presentence report did not cross over into advocacy. Id. at 216. However it found that comments not mentioned in the presentence report, about the impact on the victim's family, crossed the line. Id. Looking at the record overall, the court found that the State advocated for, and helped the court justify, an exceptional sentence beyond the agreed recommendation. Id. at 216-17.

Similarly, in Jerde, the court found that the State improperly advocated for a higher sentence when it underscored the aggravating factors that justified imposing an exceptional sentence. 93 Wn. App. at 782. For example, the State noted that the crime was committed in front of an eye witness, the crime occurred over a period of time, and the defendant lacked remorse. Id. at 778 n.3.

The State must also take great care not to present the facts in a way that makes the defendant's crime more egregious than a typical crime of the same class. Carreno-Maldenado, 135 Wn. App. at 84-85. In that case, the prosecutor emphasized to the trial court that the defendant's crimes were heinous and violent, along with the particular vulnerability of the victims. Id. at 80-81. While the State may not offer unsolicited information or argument that undermines the agreed recommendation, we review responses to an argument by defense counsel or the trial court's questions in a different light.[2] Sledge, 133 Wn.2d at 840 (obligation to not hold back relevant information regarding the plea agreement).

---

[2]Here, the prosecutor's remarks about the felony murder rule were not in response to oral statements from Erker or questions from the court. The prosecutor said she needed to comment on the felony murder rule to edify Erker in response to defense's statement in the presentencing report. But, Erker's

The State's comments in this case do not undercut the agreed recommendation as they did in Van Buren, Jerde, and Carreno-Maldenado. Here, the State fulfilled its duty under the plea agreement by recommending the agreed sentence to the trial court. The prosecutor's words did not explicitly undermine the agreement. They also did not implicitly undercut the sentencing recommendation. The prosecutor's explanation of the felony murder rule did not rise to the level of advocacy, because it did not include aggravating facts that were not already before the court. In her comments, the prosecutor states that Erker arranged a home invasion burglary and robbery with known accomplices, which led to the murder of the victim. These facts are in Erker's guilty plea statement. The prosecutor also remarks that the victim was a marijuana dealer, which was an undisputed fact from the certification for probable cause determination, to which the parties had stipulated.

Finally, the prosecutor's explanation of the felony murder rule did not make Erker's crime more egregious than a crime of the same class. The comments simply defined felony murder and why it is classified as second degree murder, along with intentional murder. The prosecutor advocated for the low end of the sentencing range, mentioning a number of factors for why the low end was appropriate.

---

statement explained why it took him so long to enter the plea. Once the plea was before the court, the reason for the delay was not relevant. The comments on the felony murder rule were unnecessary to the sentencing.

From the record as a whole it is clear that the State did not undercut Erker's plea agreement.  The State did not request appellate costs, and we do not award costs pursuant to RAP 14.2.

We affirm.

Appelwick, J.

WE CONCUR:

Mann, J.

Becker, J.