# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 82058-3-I |
| Respondent, | |
| v. | DIVISION ONE |
| STEVEN LEE RANCOUR, | UNPUBLISHED OPINION |
| Appellant. | |

APPELWICK, J. — Rancour pleaded guilty to two counts of indecent liberties and one count of third degree assault. He asserts that the State's remarks at sentencing constituted a breach of his plea agreement. He further asserts he was denied access to the courts when a commissioner of the Thurston County Superior Court denied his motion to schedule the matter in front of the sentencing judge. We reverse and remand with instructions to permit Rancour to elect to either withdraw the guilty plea or to seek specific performance of the plea agreement from the State.

## FACTS

Steven Rancour was charged with three counts of rape in the second degree in Thurston County. Rancour pleaded guilty to two amended counts of indecent liberties and an amended count of assault in the third degree assault-substantial pain. The State agreed to recommend a sentence of 102 months for each of the indecent liberties charges and the maximum sentence of 60 months

for the third degree assault charge. The recommendation for the indecent liberties charges was near the mid-point of the total standard range of 87 to 116 months.

At sentencing, the prosecutor stated that the parties had agreed to a "high – towards the high end of 102 months on each of the indecent liberties." She went on to state, "I do recognize that the Department of Corrections [(DOC)] is making a separate and distinct recommendation." The DOC had recommended the high end in its presentence investigation (PSI) report.

The prosecutor indicated that one of the three victims was present in the courtroom and wished to address the court. The prosecutor stated, "I think that whatever her recommendation is to the Court should be highly regarded." The victim told the court she wished to see him "removed from the community forever" and at least with the time that he would "grow old" and "have no energy to commit any more sexual offenses" when he was "finally a free man." The prosecutor also stated she could "indicate on behalf of the other two victims, that they are asking the court to impose the high end."

The prosecutor also asked the court to recognize that Rancour had an "exceptionally lengthy criminal history," relaying his offender score. She described facts of the case as "very graphic and very—I think should be very concerning to the court and to the public." She stated that the victims were "extremely vulnerable" and "clearly unconscious at the time of all these offenses."

Defense counsel asserted that "some of what the prosecutor said tends to undercut [the] plea bargain and make it sound much more serious than the 102 months would indicate," but did not move to strike the statements.

The trial court recognized that a plea bargain had been reached and that the parties were "jointly recommending to the Court that the Court impose 102 months." But, it continued,

> [W]hen there is an individual who has been convicted, ple[ade]d guilty, two sex offenses, has somewhere between 15 and 19 prior offenses on his or her record, has a prior sex offense, two prior convictions for escape, this Court believes it is just and proportionate and the proper sentence to impose the highest sentence allowed by law. That's 116 months.
>
> The Court understands and appreciates that that's above what the lawyers are recommending, but the Court has an obligation to protect the public, to ensure punishment that is proportionate to the seriousness of the offense and the offender's criminal history.

The court imposed the sentence of 116 months on the indecent liberties counts and 60 months on the assault in the third degree.

Rancour filed a motion to vacate the sentences on the grounds that the prosecutor's statements at sentencing unambiguously undercut the plea agreement. Rancour asserts that he presented an ex parte motion to schedule the matter in front of the sentencing judge that was denied by a commissioner of the Thurston County Superior Court without explanation. Rancour indicates the hearing was not recorded.[1] This matter was calendared after sentencing for November 21, 2019, and was stricken at the request of the defense.

Rancour appeals.

---

[1] The State indicates it cannot "confirm or deny exactly what occurred as ex parte proceedings, by definition, involve only one side of the controversy."

DISCUSSION

Rancour makes two arguments. First, he asserts the trial court erred in allowing the State to breach the plea agreement and in not providing him with a remedy for the State's breach. Second, he asserts the trial court erred in denying him access to the courts when the commissioner denied him permission for a hearing before the sentencing judge.

I. Plea Agreement

A plea agreement is a binding agreement between the defendant and the State which is subject to the approval of the court. State v. Tourtellotte, 88 Wn.2d 579, 584; 564 P.2d 799 (1977). When the State breaks the plea bargain, it undercuts the basis for the waiver of constitutional rights implicit in the plea. Id. Fairness is mandated to ensure public confidence in the administration of our justice system. State v. MacDonald, 183 Wn.2d 1, 8, 346 P.3d 748 (2015. Whether breach of the plea agreement occurred is reviewed de novo. Id.

Basic contract principles of good faith and fair dealing impose upon the State an implied promise to act in good faith in plea agreements. State v. Van Buren, 101 Wn. App. 206, 213, 2 P.3d 991 (2000). Pursuant to these principles, a plea agreement obligates the State to recommend to the court the sentence contained in agreement. Id.

The State is entitled to present relevant facts whether or not they fully support the recommended sentence. State v. Gutierrez, 58 Wn. App. 70, 76, 791 P.2d 275 (1990). But, it must not undercut the terms of the agreement. Van Buren, 101 Wn. App. At 213. The test is whether, upon reviewing the entire sentencing

record, the prosecutor contradicted, by word or conduct, the State's recommendation for a standard range sentence. State v. Halsey, 140 Wn. App. 313, 319, 165 P.3d 409 (2007).

When a prosecutor breaches the plea agreement, the court can remand for the accused to elect whether to withdraw his plea and be tried on the original charges, or seek enforcement of the agreement. Tourtellotte, 88 Wn.2d at 585; Santobello v. New York, 404 U.S. 257, 263, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971).

A. Comments on Behalf of Victims

Under Washington law, victims and survivors of victims have the right to present a statement personally or by representation at the sentencing hearing for felony convictions. MacDonald, 183 Wn.2d at 16-17; RCW 7.69.030(13). But, the statutory right to speak at a sentencing hearing does not supersede constitutional precedent from this court and the United States Supreme Court limiting arguments that undermine plea agreements. MacDonald, 183 Wn.2d at 17.

In State v. Carreno-Maldonado, the prosecutor acknowledged that three of the victims were present at the defendant's sentencing hearing. 135 Wn. App. 77, 80, 143 P.3d 343 (2006). The prosecutor stated, "It's my understanding that they are just here to observe. They don't want to speak to the court. And, I just want to make a brief statement on their behalf." Id. (emphasis omitted). Defense counsel objected that the State was failing to comply with the plea agreement. Id. at 81. The prosecutor countered that in doing so, they were not going beyond the State's recommendation. Id.

In reaching its decision, this court noted that in most circumstances, a prosecutor acting as an officer of the court who merely helps a victim exercise their constitutional and statutory right to communicate information to the sentencing court does not breach a plea agreement by that conduct alone. Id. at 86. But, at the defendant's hearing, the victims were present and able to speak or ask for assistance, the record did not show that the victims requested the State's assistance in communicating with the court, and the remarks were not given in response to the court's questions. Id. at 86. As such, the court held "the remarks were unsolicited advocacy" that "even if made on the victim's behalf, breached the plea agreement." Id. at 86-87.

In MacDonald, the defendant entered into a plea agreement in exchange for a 5 year suspended sentence with 16 months' confinement with credit for time served. 183 Wn.2d at 4-5. At sentencing, the investigating police officer advocated for a sentence contrary to the plea agreement on behalf of the victim. Id. at 5. The court held that the investigating officer was functioning as a substantial arm of the prosecution and, as such, should not have been permitted to advocate against the plea agreement. Id. It reversed the Court of Appeals and remanded with instructions to permit MacDonald to either withdraw his guilty plea or seek specific performance of the plea agreement. Id.

Here, the prosecutor stated she could "indicate on behalf of . . . two victims, that they are asking the court to impose the high end." The prosecutor did not state that the victims had requested she make these statements, nor were they present to validate what was said. But, clearly, the recommendation she made on

6

behalf of the absent victims was contrary to the plea agreement. Additionally, the prosecutor advocated for the court to take seriously the recommendation of a third victim. That victim was present and spoke on their own behalf, asking for the equivalent of a high end sentence.

Taken together, the prosecutor's statements advocating for three victims all recommending a high end sentence clearly undercut the mid-range sentencing recommendation in Rancour's plea agreement.

B. Unnecessary Statements and Aggravating Factors

Rancour asserts that the prosecutor "purposely mischaracterize[ed] her own recommendation" in describing 102 months as "towards the high end" of 116 months.

We apply an objective standard in determining whether the State breached a plea agreement irrespective of prosecutorial motivations or justifications for the failure in performance. Van Buren, 101 Wn. App. at 213. Whether or not the prosecutor's characterization of the sentencing recommendation was intentional, it was incorrect. The recommendation was half a point above the mathematical midpoint of the standard range. Describing it as near the high end was a blatant mischaracterization.

Additionally, Rancour argues the prosecutor unnecessarily referred to both the recommendation in the PSI report and facts constituting aggravating factors that would support an exceptional sentence.

In Van Buren, the court highlighted Washington courts' "concern about conduct by the State that crosses the line from objectively reporting facts that may have some bearing on the existence of aggravating factors to outright advocacy for those factors." Id. at 215.

The defendant and the prosecutor in Van Buren had agreed upon a recommendation of a mid-standard range sentence of 292 months. Id. at 209. The PSI report writer argued for an exceptional sentence. Id. The State made an unsolicited remark that "if the Court at some point wants to address specifically the issues with regards to the aggravating circumstances that is being requested by the [PSI] report writer." Id. In response to the defendant's expression of remorse, the State countered with facts from the case, concluding she "'has shown absolutely no remorse for this crime.'" Id. at 210. The trial court imposed an exceptional sentence of 400 months. Id.

> On appeal, this court found the State's conduct had,
>
> (1) downplayed its recommendation; (2) specifically focused the court's attention on two aggravating factors contained in the [PSI report]; (3) proposed an aggravating factor not specifically cited within the [PSI] report; and (4) argued the validity of one of the aggravating factors.

Id. at 217. Though the court noted the State's conduct was not as flagrant as other cases finding breach of plea agreement, on balance, it found the State had helped the trial court justify an exceptional sentence in breach of its plea agreement. Id.

Here, the PSI report did not recommend an exceptional sentence. However, the DOC recommended the high end of the sentence range in contradiction to the State's recommendation. It did so based on his offender score, criminal history, and incapacitation of and violence towards his victims.

Rancour's plea agreement provided that the judge may impose an exceptional sentence above the standard range if he was being sentenced for more than one crime and had an offender score of more than 9. See RCW 9.94A.535(2). Rancour pleaded to three counts and, as mentioned by both the PSI report and the prosecutor, his offender score was 19 regarding the indecent liberties. The existence of aggravating factors could result in an exception sentence.

The prosecutor unnecessarily noted the PSI report writer's "separate and distinct recommendation." She asked the court to "recognize that the defendant has an exceptionally lengthy criminal history," noting his offender score. She described the victims as "clearly unconscious" and "extremely vulnerable." She characterized the facts of the case as "graphic" and argued they "should be very concerning to the court and to the public."

The State argues these remarks did not constitute a breach of the plea agreement. It relies on Carreno-Maldonado, which held "It may be necessary to recount certain potentially aggravating facts in order to safeguard against the court imposing a lower sentence." 135 Wn. App at 84. While the defense asserts some of the prosecutor's statements violated the real facts doctrine, the State argues she was merely recounting facts contained in the record. The State argues a

9

prosecutor does not breach a plea agreement if, as the Carreno-Maldonado court stated, the prosecutor "use[s] great care" and the facts presented are not "of the type that make the crime more egregious than a typical crime of the same class." 135 Wn. App. at 84-85. Here, the State did not exercise such care. As in Carreno-Maldonado, the prosecutor made remarks which "went beyond what was necessary to support the mid-point sentencing recommendation[]" and "were not a response to argument by defense counsel or an attempt to provide information which the court solicited." 135 Wn. App. at 85.

On balance, the prosecutor's remarks helped the court justify a high-end standard range sentence in breach of the plea agreement. The proper remedy is to vacate the sentence and remand for Rancour to elect whether to withdraw his plea and be tried on the original charges, or seek enforcement of the agreement. Id. at 88-89. Should he elect to withdraw his plea, he may be held to answer the charges in the original information. Id. at 89. Should he elect to seek enforcement of the agreement, he is entitled to a new sentencing hearing from a different judge. Van Buren, 101 Wn. App. at 217-218.

## II. Access to Courts

Finally, Rancour argues that he was denied the opportunity to move to vacate his sentence before the sentencing judge. He argues the Thurston County court rules did not allow him to have his motion heard before a judge on a recorded calendar because the only method to challenge a commissioner's decision is a motion to revise under RCW 2.24.050. This argument is not adequately briefed, and in light of the breach of his plea agreement, the issue is moot.

10

We reverse and remand with instructions to permit Rancour to elect to either withdraw the guilty plea or to seek specific performance of the plea agreement from the State.

Appelwick, J.

WE CONCUR:

Mann, C.J.

Verellen, J