# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56823-3-II |
| Respondent, | |
| v. | |
| ERIC SEAN ROLOSON, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, A.C.J. — Eric S. Roloson pled guilty to two counts of rape of a child in the first degree. As part of the plea agreement, the State agreed to recommend a special sex offender sentencing alternative (SSOSA). The trial court rejected the recommendation and imposed a standard range sentence. Roloson appeals, contending that the State breached the plea agreement by nominally recommending a SSOSA and then raising aggravating facts to persuade the court not to impose a SSOSA. He also contends he should be permitted to withdraw his guilty pleas because they were involuntary. Roloson lastly contends that the court erred by imposing a $500 victim penalty assessment (VPA), a $100 deoxyribonucleic acid (DNA) collection fee, and a $100 domestic violence assessment. We affirm Roloson's convictions, but remand for the trial court to strike the VPA and DNA collection fee and reconsider the domestic violence assessment.

## FACTS

Following allegations in January 2020 of sexual abuse involving Roloson and his stepdaughters, Roloson left for Hawaii. He was arrested in August 2020 and brought back to

Washington in October 2020.[1]  The State charged him with two counts of rape of a child in the first degree and two counts of child molestation in the first degree.  All crimes included a special allegation of domestic violence.

Roloson agreed to plead guilty to two counts of rape of a child in exchange for the State dropping the molestation charges and recommending a SSOSA.  It was the parties' understanding that the victims also endorsed a SSOSA for Roloson.

At the plea hearing, the trial court informed Roloson of the standard sentencing range on both charges and that both counts were subject to the Indeterminate Sentencing Review Board.  Roloson expressed no reservations.  The court also informed him that it was aware of the parties' joint recommendation for a SSOSA, but the court did not have to follow that recommendation and instead it could impose a sentence anywhere within the standard sentencing range.  Roloson stated, "I do understand that, Your Honor."  Rep. of Proc. (RP) at 19.  Roloson then pled guilty to two counts of rape of a child in the first degree.  The court ordered a presentencing investigation report (PSI).

The PSI indicated that the girls' mother and one of the girls "initially agreed that a SSOSA sentence was appropriate, but that they do not want that now."  Clerk's Papers (CP) at 21.  The PSI also indicated that the mother reported that "[t]he girls have a life sentence dealing with what happened to them.  [Roloson] should have a life sentence in prison because you can't take it back."  CP at 21.  Based on the victims' statements, Roloson's statements, and a risk assessment, the PSI recommended that Roloson receive a standard range sentence.

---

[1] The delay in returning to Washington was because Roloson was incarcerated in Hawaii and, while in custody, he was attacked by other inmates.  His injuries were significant, resulting in a lengthy hospital stay and ultimately delaying commencement of proceedings in Washington.

At the 2022 sentencing hearing, the State began by stating that there was an agreed recommendation for a SSOSA. The State then addressed the somewhat inconsistent statements from the victims in the PSI about initially supporting a SSOSA but then appearing to change their minds. The State explained that it had been a long and difficult process for them in part because Roloson "took flight to Hawaii," was brought back to Washington in October 2020, and the matter had been pending ever since. RP at 36.

The State went on to explain that it described the sentencing recommendation alternatives with the victims and they agreed a SSOSA would be best, and most importantly, they wanted finality. The State clarified that the girls and their mother "did support the SSOSA. They still do support the SSOSA, but as with everything in life, there are conflicts. And they're—they're just normal people who have had a really bad thing happen to them, and they have some conflicts. They're going to have an opportunity to express that to Your Honor." RP at 36-37.

The girls' mother spoke at the sentencing hearing. She told the trial court that she supported the plea agreement, including a SSOSA recommendation, to prevent her daughters from having to testify and relive Roloson's horrendous actions. She further stated that she had "fears that if he is released into the community, he will recommit these horrendous crimes. Repeating the same actions of molesting, raping, physically and mentally abusing my family. . . . I do fear [Roloson] will try to come after us if he is released." RP at 41. She requested that if the court decided to impose a SSOSA that Roloson not be permitted to "be released into Cowlitz County. The thought of him living in the same town as us is completely devastating." RP at 41.

The girls also made statements at the sentencing hearing. One told the trial court that "[t]he only reason I chose to let him have the SSOSA deal was because I was scared of facing him in trial." RP at 43. The other girl stated, "I fear that if proper action isn't taken, that others may be

3

hurt and abused by [Roloson]." RP at 47. She asked the court to take into consideration "the safety of our community." RP at 47.

Roloson then interjected that the sentencing hearing must stop because he was going to file a motion to withdraw his guilty pleas. The trial court stopped the sentencing hearing and allowed briefing on the motion to withdraw the guilty pleas.

Roloson argued that he wanted to withdraw his guilty pleas on the basis that his pleas were not knowing, intelligent, and voluntary because the State breached the plea agreement. Roloson claimed that he only took the plea agreement because of the State's assurances that the victims would support a SSOSA and it appeared that was not the case at the sentencing hearing. Roloson claimed he was "bombarded" and that the plea agreement was "undercut" in a way that created a manifest injustice. RP at 67-68.

The State responded that it satisfied its obligation under the plea agreement by recommending a SSOSA and that the victims expressed their desire for a SSOSA even though they had concerns about Roloson in the community. The State further argued that there was no breach because it could not control what the victims would say and that the victims were not parties to the plea agreement. The State commented that it appeared defense counsel was implying that Roloson "only admitted behavior in order to get this deal and not that he was actually admitting to the behavior. That's a problem." RP at 71.

In an affidavit in support of its memorandum opposing Roloson's motion to withdraw the guilty plea, the prosecutor stated that the PSI caused him "some concern" based on both Roloson's and the victims' statements so he met with the girls and their mother after the PSI and felt satisfied that they "remained supportive" of a SSOSA. CP at 136-37.

4

The trial court denied Roloson's motion to withdraw his guilty pleas, finding that the State did not breach the plea agreement. The court reminded Roloson that the court did not have to follow the State's sentencing recommendation or the victims' wishes.

The matter proceeded to sentencing. The State informed the trial court that it "adheres to its recommendation" for a SSOSA and asked the court to "follow that." RP at 77.

The trial court went through the statutory factors of whether to impose a SSOSA. It found that Roloson could benefit from treatment, but it also found that there were allegations that Roloson committed numerous acts of sexual assault over the years against his young stepdaughters and therefore a SSOSA appeared too lenient. The court also found that Roloson was a significant risk to the community. The court stated that the victims and their mother "said the words, they wanted SSOSA imposed" and appeared to "desire for SSOSA" RP at 84-85. The court acknowledged that the mother "kind of strayed" and the girls appeared to want a SSOSA "largely to avoid trial." RP at 84-85. The court also noted that Roloson's leaving the area to avoid prosecution caused concern that he may do the same if there was a SSOSA violation and a sanction was imposed. The court noted, "the risk is huge if there's a re-offense." RP at 88.

Ultimately, the trial court denied the SSOSA recommendation and imposed the low end of a standard range sentence of 120 months to life on both counts, to be served concurrently. The court found Roloson was indigent, but imposed a $500 VPA, a $100 DNA collection fee, and a $100 domestic violence assessment as legal financial obligations (LFOs).

Roloson appeals.

ANALYSIS

I.     BREACH OF PLEA AGREEMENT

Roloson contends the State breached the plea agreement by nominally recommending a SSOSA and then raising aggravating facts to persuade the trial court not to impose a SSOSA. He further alleges he should be entitled to withdraw his guilty plea or demand specific performance based on the State's alleged breach. We disagree.

A.     Legal Principles

Whether a breach of a plea agreement has occurred is a question of law we review de novo. *State v. Molnar*, 198 Wn.2d 500, 513, 497 P.3d 858 (2021). A plea agreement is a contract between the defendant and the State. *Id*. at 512. Because plea agreements concern the fundamental rights of the accused, the State has a "'good faith obligation to effectuate the plea agreement.'" *Id*. (quoting *State v. Sledge*, 133 Wn.2d 828, 840, 947 P.2d 1199 (1997)).

"A prosecutor is obliged to fulfill the State's duty under the plea agreement by making the promised sentencing recommendation." *Sledge*, 133 Wn.2d at 840. "The recommendation need not be made 'enthusiastically.'" *Id*. at 840 (quoting *State v. Coppin*, 57 Wn. App. 866, 873, 791 P.2d 228 (1990)). But the prosecutor is obligated not to undermine the terms of the agreement either explicitly or through conduct demonstrating an intent to evade the terms of the plea agreement. *Sledge*, 133 Wn.2d at 840.

Just because the parties reached an agreed recommendation does not mean the sentencing court "[sh]ould be faced with a one-sided hearing." *State v. Talley*, 134 Wn.2d 176, 186, 949 P.2d 358 (1998). "The State must be allowed to use descriptive words in addition to stipulated facts because, while the State's 'recommendation need not be made enthusiastically,' it need not be made so unenthusiastically that it is unhelpful to the sentencing court." *Molnar*, 198 Wn.2d at 517

(internal quotation marks omitted) (emphasis omitted) (quoting *Sledge*, 133 Wn.2d at 840). Thus, the mere mention of aggravating facts does not automatically breach the plea deal. *Molnar*, 198 Wn.2d at 516.

Ultimately, we "'review [the] prosecutor's actions and comments objectively from the sentencing record as a whole to determine whether the plea agreement was breached.'" *State v. Ramos*, 187 Wn.2d 420, 433, 387 P.3d 650 (2017) (alteration in original) (quoting *State v. Carreno-Maldonado*, 135 Wn. App. 77, 83, 143 P.3d 343 (2006)). "A breach occurs when the State 'undercut[s] the terms of the agreement explicitly or implicitly by conduct evidencing an intent to circumvent the terms of the plea agreement.'" *Id.* (quoting *Carreno-Maldonado*, 135 Wn. App. at 83). We review the State's actions objectively, focusing "'on the effect of the State's actions, not the intent behind them.'" *Id.* (quoting *Sledge*, 133 Wn.2d at 843 n.7). If we find a party breached the plea agreement, the nonbreaching party may either rescind or specifically enforce the terms of the plea agreement. *State v. Wiatt*, 11 Wn. App. 2d 107, 111, 455 P.3d 1176 (2019).

B.    No Breach

Here, the State addressed how difficult the process was for the victims and mentioned that this was in part due to Roloson taking "flight to Hawaii" after the abuse allegations, which extended the time for them to have finality. RP at 36. In response to Roloson's motion to withdraw his guilty pleas, the State argued that there was no breach because it could not control what the victims would say and that the victims were not parties to the plea agreement. Later, the State commented that it appeared defense counsel was saying that Roloson "only admitted behavior in order to get this deal and not that he was actually admitting to the behavior. That's a problem." RP at 71.

Relying on *State v. Xaviar*, *State v. Jerde*, and *Carreno-Maldonado*, Roloson argues these statements amount to a breach of the plea agreement.

In *State v. Xaviar*, 117 Wn. App. 196, 198-201, 69 P.3d 901 (2003), the State and the defendant agreed to a recommendation at the bottom of the standard sentencing range. But at sentencing, the prosecutor emphasized the graveness of the crime, reiterated the charges that the State did not bring, noted that the State could have, but did not, ask for a 60-year exceptional sentence, highlighted aggravating factors that would support an exceptional sentence, and referred to the defendant as "'one of the most prolific child molesters that this office has ever seen.'" *Id.* at 200. Division One of this court held that the prosecutor's conduct constituted a breach of the plea agreement. *Id.*

In *State v. Jerde*, 93 Wn. App. 774, 776-77, 970 P.2d 781 (1999), the State agreed to recommend a standard range sentence, while the PSI recommended an exceptional sentence. At sentencing, the prosecutor briefly noted the State's recommendation but proceeded to identify aggravating factors that the court could consider in support of an exceptional sentence, including factors that were not contained in the PSI. *Id*. at 777-78, 782. This court concluded that the prosecutor's conduct amounted to a breach of the plea agreement, making specific note of the prosecutor's reference to aggravating factors not mentioned in the PSI and observing that the prosecutor "advocated for an exceptional sentence by highlighting aggravating factors and even added an aggravating factor not found in the [PSI]." *Id*. at 782.

Finally, in *Carreno-Maldonado*, 135 Wn. App. at 79-80, the State agreed to make a low-end recommendation on one count of rape in the first degree, a midpoint recommendation of 240 months on five counts of rape in the second degree, and a high-end standard range recommendation on a count of assault in the second degree. At the sentencing hearing, the trial court set out the

standard range sentence, acknowledged having reviewed the PSI and plea agreements, then asked the State if it had anything to add. *Id*. at 80. The prosecutor then made a statement "'on behalf of the victims'" in which the prosecutor referred to the defendant's "'very extreme violent behavior'" and his preying on "'what would normally be considered a vulnerable segment of our community'" in carrying out "'crimes . . . so heinous and so violent [they] showed a complete disregard and disrespect for these women.'" *Id*. at 80-81. Only when defense counsel objected and suggested that the State was failing to comply with the plea agreement did the prosecutor respond, "'I'm speaking here on behalf of the victims and on behalf of the [S]tate[.] And I'm not going beyond my recommendation in this case. It's an agreed recommendation. M[y] recommendation [for the rape in the second degree is] 240 months.'" *Id.* at 81 (alterations in original). This court held that the prosecutor's statements at the sentencing hearing breached the plea agreement by undercutting the State's agreed sentence recommendation. *Id*. at 79.

In this case, the State commented on Roloson leaving to Hawaii, recognized there was some inconsistency with the victims' and their mother's wishes, and commented during the motion to withdraw the guilty plea that Roloson's timing of his motion to withdraw his guilty plea seemed to suggest he "only admitted behavior in order to get this deal and not that he was actually admitting to the behavior." RP at 71. But we do not view these statements in isolation. *Ramos*, 187 Wn.2d at 433.

Viewing the sentencing record as a whole, the State clearly stated that it adhered to its recommendation and hoped the trial court would follow it. The State also stated that it described the sentencing recommendation alternatives with the victims, they agreed a SSOSA would be best, and most importantly, they wanted finality. The State clarified that the girls and their mother "did support the SSOSA. They still do support the SSOSA." RP at 36. Additionally, Roloson's travel

9

to Hawaii was significant because it caused months of delay in the Washington proceedings because of his concomitant hospital stay. This was relevant to the length of the proceeding and related difficulty this caused for the victims, which explains in part their conflicted position as to the SSOSA. The State was not advocating against the plea agreement in highlighting this fact.

Based on the above, the facts of this case are distinguished from *Xaviar*, *Jerde*, and *Carreno-Maldonado*. While the State may not have enthusiastically recommended a SSOSA, it did not undercut the terms of the plea agreement explicitly or implicitly.

Because we hold that the State did not breach the plea agreement, we need not reach Roloson's argument that he is entitled to either withdraw his guilty plea or request specific performance of the parties' agreement. *See State v. McNichols*, 128 Wn.2d 242, 253, 906 P.2d 329 (1995) (based on the court's dispositive holding, it need not reach issue regarding proper remedy).

## II.     WITHDRAWAL OF GUILTY PLEAS

Roloson next contends that he should be entitled to withdraw his guilty pleas because his pleas were involuntary due to the State's false assurance that the victims would recommend a SSOSA. We disagree.

### A.     Legal Principles

Because this issue was raised before the trial court, our review is focused on whether the trial court abused its discretion in denying Roloson's motion to withdraw his guilty pleas. *State v. Lamb*, 175 Wn.2d 121, 127, 285 P.3d 27 (2012). Discretion is abused if the court's decision lacked a tenable basis in law or fact. *State v. Arndt*, 194 Wn.2d 784, 799, 453 P.3d 696 (2019). Trial courts must allow a defendant to withdraw a guilty plea to prevent a manifest injustice. *State v. Wilson*, 162 Wn. App. 409, 414, 253 P.3d 1143 (2011); CrR 4.2(f). Our courts generally recognize

four indicia of a manifest injustice: (1) denial of effective assistance of counsel, (2) failure of the defendant or one authorized by him to do so to ratify the plea, (3) involuntary plea, and (4) violation of plea agreement by the prosecution. *State v. S.M.*, 100 Wn. App. 401, 409, 996 P.2d 1111 (2000).

Lack of information may render a guilty plea involuntary. *State v. Mendoza*, 157 Wn.2d 582, 587-88, 591, 141 P.3d 49 (2006). But a guilty plea is not involuntary if "the defendant was correctly informed of all of the direct consequences of his guilty plea." *Id*. at 591.

Washington State Constitution, article I, section 35 (amend. 84) provides crime victims and their families or representatives the opportunity to make a statement at a defendant's sentencing. *See also State v. Gentry*, 125 Wn.2d 570, 624, 888 P.2d 1105 (1995). As it relates to the rights of victims and their families, the amendment provides, "[t]his provision shall not constitute a basis for error in favor of a defendant in a criminal proceeding." WASH. CONST. art. I, § 35. In addition to constitutional protections, RCW 7.69.030(1)(m) and (n) permit victims and victims' families or representatives to submit victim impact statements to the court and to personally make a statement at a sentencing hearing in a felony case.

B.      No Abuse of Discretion

Here, the State charged Roloson with two counts of rape of a child in the first degree and two counts of child molestation in the first degree. In exchange for the State dropping both child molestation charges and recommending a SSOSA, Roloson agreed to plead guilty to the child rape charges.

At the sentencing hearing, the State informed the trial court that there was an agreed recommendation for a SSOSA. The State went on to explain that it described the sentencing recommendation alternatives with the victims and they agreed a SSOSA would be best, and most importantly, they wanted finality. The State clarified that the victims and their mother "did support

11

the SSOSA. They still do support the SSOSA, but as with everything in life there are conflicts. And they're—they're just normal people who have had a really bad thing happen to them, and they have some conflicts. They're going to have an opportunity to express that to Your Honor." RP at 36-37. After the trial court denied Roloson's motion to withdraw his guilty plea, the State reiterated that it "adheres to its recommendation" for a SSOSA and asked the court to "follow that." RP at 77.

While the victims made statements detailing Roloson's years of abuse and their fear that he would continue to hurt people in the future, these statements were within their rights and did not result in a breach of the plea agreement between Roloson and the State. Notably, the victims' mother and one of the victims expressed their support of the SSOSA. RCW 7.69.030(1)(m) and (n); *Gentry*, 125 Wn.2d at 624. Moreover, the trial court clearly advised Roloson that it was not bound by the sentencing recommendation in the plea agreement. *See* RCW 9.94A.431(2).

Based on the above, there was no manifest injustice based on an involuntary guilty plea to warrant the withdrawal of Roloson's guilty pleas. The trial court properly concluded likewise. Therefore, we hold that the trial court did not err in denying Roloson's motion to withdraw his guilty plea.

III.    LFOs

Roloson next contends that the trial court erred by imposing a $500 VPA, a $100 DNA collection fee, and a $100 domestic violence assessment after finding Roloson indigent. The State took no position on Roloson's arguments.

When the trial court sentenced Roloson, it was required to impose a VPA of $500 under former RCW 7.68.035(1)(a) (2018), regardless of a defendant's indigency, as well as a $100 DNA collection fee under former RCW 43.43.7541 (2018). But those statutes have since been amended.

Now, a "court shall not impose the [VPA] under this section if the court finds that the defendant, at the time of sentencing, is indigent as defined in RCW 10.01.160(3)." LAWS OF 2023, ch. 449, § 1. The legislature also eliminated the $100 DNA collection fee for all defendants. *See* LAWS OF 2023, ch. 449, § 4. Both amendments took effect July 1, 2023. LAWS OF 2023, ch. 449, § 27. Although these amendments took effect after Roloson's sentencing, they apply to cases pending appeal. *See State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023). Therefore, we remand for the trial court to strike the VPA and DNA collection fee.

Regarding the domestic violence assessment, former RCW 10.99.080(1) (2015) states that the trial court may impose a domestic violence assessment on any adult offender convicted of a crime involving domestic violence. Recent amendments to this statute did not change this language. LAWS OF 2023, ch. 470, § 1003. Sentencing courts have discretion as to whether to impose a domestic violence assessment, which is to be used for the purposes of domestic violence advocacy and domestic violence prevention. *See* RCW 10.99.080(1), (2)(a); LAWS OF 2015, ch. 275, § 14. The assessment is not mandatory. Sentencing courts "are encouraged to solicit input from the victim or representatives for the victim in assessing the ability of the convicted offender to pay the penalty," but are not required to do so. *See* RCW 10.99.080(5), LAWS OF 2015, ch. 275, § 14. Because there is no explanation in our record regarding the trial court's decision to impose the domestic violence assessment, we permit Roloson to move for the trial court to reconsider that fee on remand in light of Roloson's indigence.

CONCLUSION

We affirm Roloson's judgment and sentence but remand to strike the VPA and DNA collection fee and potentially revisit the domestic violence assessment.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, A.C.J.

We concur:

_____
Lee, J.

_____
Che, J.